2003 SD 151

**Rodney FOSTER, Plaintiff and Appellant,**

v.

**Thomas FOSTER, Defendant and Appellee.**

**No. 22784.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided Dec. 23, 2003.

Ellie M. Vandenberg, Volga, South Dakota, Attorney for plaintiff and appellant.

Robert M. Ronayne of Ronayne and Wein, Aberdeen, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] We are confronted with the question whether a debtor who failed to disclose his legal claim in bankruptcy may be estopped from later asserting that claim in circuit court. The debtor believed his brother breached an agreement to sell him certain real property. When the debtor filed for bankruptcy, he did not report this agreement in his bankruptcy filings. After the filing but before final discharge, the debtor obtained a handwritten note from his brother that the debtor claims either ratified the earlier agreement or created a new agreement. When the bankruptcy ended, the debtor sued his brother to enforce the agreement. On cross-motions for summary judgment, the circuit court granted the brother's motion, ruling that the debtor was estopped from bringing the claim when he failed to disclose it in the bankruptcy. Although the circuit court correctly held that the original agreement should have been disclosed

in the bankruptcy case and could not later be enforced in circuit court, the handwritten note was not subject to the bankruptcy proceedings to the extent that it may have constituted a new agreement. We affirm in part, reverse in part, and remand.

## Background

[¶ 2.] On August 6, 1993, Ramsey Marlowe Foster died. His sons, Rodney and Thomas Foster, were appointed co-executors of their father's estate. The brothers began negotiating the division of the real property they were to receive under the will. Several estate debts complicated the distribution. Included in those debts was a claim by the decedent's former spouse, Thomas and Rodney's mother, for approximately $56,000. In addition, the deceased owed the FmHA $50,000, and the estate owed federal taxes of $4,450.

[¶ 3.] The brothers wanted the property to remain in the family. However, Rodney was unable to obtain the necessary financing to arrange a distribution that included the payment of estate debts. Therefore, the brothers planned a series of transactions. Initially, Thomas would obtain a loan of $77,750 to purchase the property, and he would receive title to the land. The assets would then be used as collateral. The next transaction called for Rodney and Thomas to each pay $5,500 into the estate. The additional $11,000 together with the $77,750 sale proceeds would cover $88,750 of expenses owed by the estate. For his contribution, Rodney was to receive an option to acquire title equal to fifty percent of the estate real property. Jody Foster, Thomas's wife, was not involved in the negotiations.

[¶ 4.] Rodney and Thomas each paid the additional $5,500 into the estate. Upon court approval of the property sale to Thomas, Thomas deposited $77,750 into the estate. As co-executors, Thomas and Rodney transferred title of the property to

Thomas and his wife, Jody, on December 14, 1995. That same day, Rodney signed the second agreement entitling him to exercise an option on the property; however, Thomas refused to sign this agreement.

[¶ 5.] Rodney's financial situation worsened, and in February 1996, he filed for Chapter 12 bankruptcy protection. He did not disclose to the bankruptcy court any options or claims on the property. On August 15, 1996, the bankruptcy court converted Rodney's Chapter 12 filing to a Chapter 7 filing. With this conversion, Rodney was forced to liquidate all non-exempt assets.

[¶ 6.] On September 2, 1997, Thomas signed a handwritten note stating, "Rod Foster will get ½ of all RM's Estate Land with him paying ½ of all debt owed to Northwest Bank at Viborg, ½ Debt to Joyce Foster, ½ Debt to Attorneys, ½ of all taxes." According to Thomas, he signed this document only because Rodney was illegally and wrongfully withholding from him monies that he was entitled to from the ASCS office. Thomas further stated that "after he received the check that Rodney was wrongfully withholding, [he] repudiated the document and explained that he signed it only because he needed to obtain the money illegally and wrongfully withheld."

[¶ 7.] In a later affidavit, Thomas further explained the note:

The notebook memo was written after my brother's bankruptcy case was converted into Chapter 7. In mid to late 1997, [approximately one year after the conversion,] the Chapter 7 bankruptcy trustee was seeking a purchaser of all of my brother's non-exempt assets. The plan at that time was that my mother would purchase the non-exempt assets, including any interest my brother would have in the remaining land owned in the Ramsey Marlowe Foster Estate. That sale was not consummated.

The notebook memo explains that if my mother was the successful bidder (on behalf of Rodney) Rodney would be entitled to a one-half interest in the remaining estate land, but he would have to pay his share of the expenses incurred in completing the estate and deeding out the land.

My mother initially bid $30,000.00 to purchase these assets, as my brother's lender. She later backed out of the purchase as I understand it, because my brother, Rodney, told her that was too much to pay for the purchase of the non-exempt assets.

The trustee would not consider sale of those assets for less than $30,000.00. Subsequently, the trustee offered the non-exempt assets to Jody and me at the same price, for $30,000.00. That sale was eventually completed with the trustee.

The notebook document, then, explains that if my brother purchased his non-exempt assets from his bankruptcy estate through my mother, in that event, Rodney would then have an opportunity to purchase one-half of all of the remaining Ramsey Marlowe Foster estate assets, provided he paid half of the expenses. Again, it was after this that my mother backed out [of] this transaction, apparently at his direction.

The notebook page did not have anything to do with the alleged agreement which is subject to this litigation.

[¶ 8.] On October 29, 1998, Chief Bankruptcy Judge Irvin N. Hoyt signed an order confirming the "sale and assignment of all property of [Rodney's bankruptcy] estate to Thomas and Jody Foster" for the sum of $30,000.

[¶ 9.] In bringing suit against Thomas in circuit court, Rodney alleged that Thom-

as had breached their agreement by refusing to honor the original unsigned agreement. Both Rodney and Thomas moved for summary judgment. After a hearing, the circuit court concluded that because Rodney's creditors had been deprived of the opportunity to maximize their recovery due to his failure to disclose any claims to the property, he was estopped from pursuing such claims.

[¶ 10.] On appeal, Rodney raises two issues: (1) "Whether the trial court erred in granting [Thomas's] motion for summary judgment." (2) "Whether [Rodney] was required to claim two interests in real property, one of which was a right to title to real property and one of which was a right to an option to purchase a one-half interest in real property, in his Chapter Twelve bankruptcy schedules, such that now he is precluded from exerting those claims by the doctrines of equitable and/or judicial estoppel."

### Analysis and Decision

[¶ 11.] Rodney argues that significant factual issues have not been resolved, thus precluding summary judgment. He believes that when all reasonable inferences are drawn from the facts in a light most favorable to him as the nonprevailing party, summary judgment should not have been granted. "Under our familiar standard for reviewing summary judgments, we decide only whether genuine issues of material fact existed and whether the law was correctly applied." *Harms v. Northland Ford Dealers,* 1999 SD 143, ¶ 8, 602 N.W.2d 58, 61 (quoting *Kobbeman v. Oleson,* 1998 SD 20, ¶ 4, 574 N.W.2d 633, 635). Summary judgment is not for disposing of factual questions. *Harn v. Continental Lumber Co.,* 506 N.W.2d 91, 94 (S.D. 1993) (citations omitted). Only when fact issues are undisputed will they become questions of law for the court. *Id.*

We will affirm the trial court's decision if we find any legal basis to support it. *De Smet Ins. Co. of South Dakota v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99 (citations omitted); SDCL 15-6-56(c). "That both sides move for summary judgment does not mean that there are no genuine issues, obliging a court to grant judgment for one side or the other." *St. Paul Fire and Marine Insurance Co. v. Engelmann,* 2002 SD 8, ¶ 15, 639 N.W.2d 192, 199 (citation omitted). Both motions must be denied if the court detects genuine issues of fact or genuine issues on the inferences discernible from the facts. *Id.* (citations omitted). Statutory and contract interpretation are questions of law reviewed de novo. *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D. 1994).

[¶ 12.] Initially we note that any claim that Rodney might have had stemming from the unsigned agreement has been relinquished. Such a claim would properly have been within the bankruptcy estate. 11 USC 541(a)(1) provides, "Except as provided in subsections (b) and (c)(2) of this section, all legal or *equitable* interests of the debtor in property as of the commencement of the case" comprise estate property. (Emphasis added.) Rodney's failure as a debtor to list this claim will not evade this mandate. Therefore, any such claim was properly included within the bankruptcy estate even though Rodney failed in his duty to list the claim as an asset.

[¶ 13.] Further, there can be no question that any claim was assigned to Thomas and Jody upon their purchase of all Rodney's non-exempt assets from the bankruptcy trustee. The order issued by the bankruptcy court clearly decrees that "*all property of the estate*" was subject to the order. Such language necessarily cov-

ers any *de minimis* interests not specifically described in the order.[1] In any event, only the trustee could properly raise a question on whether certain estate property was included within the assignment to Thomas. Here, any rights or claims which may have arisen from the unsigned agreement fell within the definition of estate property. As to the bankruptcy estate property, Rodney has no claim.

[¶ 14.] Rodney contends that he had no duty to disclose claims that accrued 180 days after his petition. He relies on the statutes pertaining to Chapter 12 bankruptcies. 11 USC 1207(a)(1) provides:

> Property of the estate includes, in addition to the property specified in section 541 of this title
>
> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, *or converted to a case under chapter 7 of this title,* whichever occurs first.

Originally, Rodney filed for bankruptcy under Chapter 12. On August 15, 1996, the bankruptcy court converted Rodney's Chapter 12 filing to a Chapter 7 filing. The language of the provision sets that date as the date after which property acquired by the debtor rightfully belongs within the debtor's property. Therefore, any subsequent rights conferred on Rodney by the handwritten note of September 2, 1997 do not fall within the property of the bankruptcy estate.

[¶ 15.] While we agree that Rodney may have obtained some rights from the handwritten note, we caution that those claims may not rely on interests that should have been or could have been brought forth under the unsigned agreement. That is, Rodney may not assert that his payment of the $5,500 under the previous agreement can be said to be consideration for the new and separate handwritten agreement. Furthermore, any partial performance by Thomas under the unsigned agreement may not be used by Rodney in conjunction with the handwritten agreement. Those claims were sold to Thomas with his purchase of Rodney's non-exempt assets.

[¶ 16.] Instead, Rodney may show that Thomas partially performed under the handwritten agreement or that Rodney's release of the ASCS funds amounted to consideration for the note. It would not be permissible for Rodney to rest his assertion on an allegation that the handwritten note was a ratification of the prior agreement. Nor would it be permissible for Rodney to claim that he relied on Thomas's prior words and actions where those actions or words occurred before the conversion of Rodney's bankruptcy filing. A view of the totality of Thomas's actions must be limited in its scope to those actions that Thomas took in conjunction with the handwritten note. In sum, claims arising from Thomas's actions before the conversion date belong to Thomas, not Rodney.

[¶ 17.] Finally, we observe that the handwritten note was not signed by Jody Foster. For that reason, any claims that Rodney may have against Thomas might not be sufficient to establish Rodney's right to a one-half share in the property. Instead, Rodney's claims may be limited to only that portion of the property that Thomas rightfully holds.

[¶ 18.] We conclude that on those claims arising under the unsigned agreement, Rodney is equitably and judicially estopped from asserting such claims.

---

1. Because the value of the property was so encumbered by debt, the bankruptcy trustee concluded that any claims Rodney may have held in the property were *de minimis*.

*See Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 417, 419 (3rdCir.1988) (citations omitted). First, any interest Rodney had in the unsigned agreement with his brother should have been disclosed and adjudicated in bankruptcy court. Second, all rights that Rodney may have had under that agreement were sold to Thomas and Jody. Included in those rights were all causes of action and all rights to sue. On the other hand, with respect to the handwritten note significant questions of fact and law remain unresolved. Therefore, it is left to the trial court to determine whether the handwritten note established a contract and, if so, what rights that contract may have conferred upon Rodney.

[¶ 19.] Affirmed in part, reversed in part, and remanded.

[¶ 20.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.