2004 SD 111

**Paul A. VOLLMER, Plaintiff and Appellee,**

v.

**H.A. AKERSON, Bernard Balaban and Denis Muhlstein, dba, Siouxland Oral & Maxillofacial Surgery Associates, Defendants and Appellants.**

No. 23134.

Supreme Court of South Dakota.

Considered on Briefs Aug. 23, 2004.

Decided Oct. 6, 2004.

Jody Odegaard Smith of Glover, Helsper & Rasmussen, Brookings, South Dakota, Attorneys for plaintiff and appellee.

Michael L. Luce, Eric C. Schulte of Davenport, Evans, Hurwitz & Smith, Sioux Falls, South Dakota, Attorneys for defendants and appellants.

MEIERHENRY, Justice.

[¶ 1.] Plaintiff brought an action to recover money his employer withheld from his final paycheck. The money was withheld to pay the costs of purchasing tail

insurance coverage. The parties dispute whether the employment contract required a former employee to purchase tail insurance coverage at the expiration of his employment contract.[1] The trial court granted Plaintiff's motion for summary judgment and awarded him the amount withheld. Employer appeals. We affirm.

## FACTS

[¶ 2.] Siouxland Oral & Maxillofacial Surgery Associates (Associates) entered into a one year employment contract with Paul Vollmer, a dentist and oral maxillofacial surgeon.[2] Although the parties discussed extending the employment arrangement to a second year, Vollmer eventually decided against it. Associates informed Vollmer that his employment contract required him to purchase tail coverage upon his termination of employment in order to protect Associates from future claims that could arise from Vollmer's employment with Associates. Vollmer refused. Associates purchased the desired policy and charged the cost to Vollmer. The amount of the policy, $11,353.00, was subtracted from Vollmer's final paycheck. Vollmer filed a suit against Associates to recover the cost of the tail policy. Vollmer contended the employment contract did not require him to purchase tail insurance coverage at the natural expiration of the term

of the employment contract, but only in the event of other specific incidents of termination. He moved for and was granted summary judgment. Associates appeal.

## ISSUE

[¶ 3.] Associates raise the following issue:

**Whether the trial court erred as a matter of law in ruling the contract did not require Vollmer to purchase tail insurance coverage.**

## STANDARD OF REVIEW

[¶ 4.] We recently stated that on appeal the grant or denial of summary judgment "requires this Court to determine whether genuine issues of material fact exist and whether legal issues were correctly decided." *Prunty Const., Inc. v. City of Canistota*, 2004 SD 78, ¶ 5, 682 N.W.2d 749, 752. The legal issue here is the interpretation of the employment contract. "Statutory and contract interpretation are questions of law reviewed de novo." *Foster v. Foster*, 2003 SD 151, ¶ 11, 673 N.W.2d 667, 671. Thus we must determine whether the trial court's interpretation of the contract was correct, and we make this determination de novo.

---

1. Tail policies have been described as follows:

   "Tail" or discovery period coverage essentially supplements a claims-made policy to give the insured added protection. *See Arad v. Caduceus Self Ins. Fund, Inc.*, 585 So.2d 1000, 1001 (Fla. 4th DCA 1991) ("[Tail coverage] protects [insureds] into the future for claims regarding incidents that occurred during the policy period but which were not presented until after the policy expired."); *American Casualty Co. v. Rahn*, 854 F.Supp. 492, 501 (W.D.Mich. 1994) ("In effect, [tail coverage] provide[s] an extended period during which the insured may discover the existence of a claim based on the prior conduct."). The logic of

   such policies is that an act of malpractice might not be discovered until after the original policy period had terminated, at which time the insured would be completely vulnerable to suit. Tail coverage picks up where the claims-made policy leaves off, with respect to acts committed during the original policy period. Tail coverage does not provide indemnity for new negligent acts or omissions committed during the tail period.
   *U.S. Fire Ins. Co. v. Fleekop*, 682 So.2d 620, 623 (Fla.Dist.Ct.App.1996).

2. Employment term was December 1, 2001 through November 30, 2002.

## DECISION

*Contractual Requirement to Purchase Tail Coverage*

■ [¶ 5.] Associates contend that Vollmer was contractually obligated to purchase tail coverage when his one year employment contract ended. Associates rely on the following contract language which requires tail insurance if either party terminates the contract:

> Should either party *terminate* the Employment Agreement, the Employee will be responsible for purchasing the "tail" of the liability insurance policy, and by signing the Agreement, acknowledges such obligation.

(Emphasis added.) Associates argue that Vollmer's decision not to extend the employment arrangement beyond the one year contract constituted a termination under the contract. The trial court concluded the definition of "terminate" did not include the "natural expiration" of the one-year employment contract. The contract defines "Events of Termination"[] as follows:

> Events of Termination: This Agreement shall terminate as follows:
>
> a) By mutual written agreement of the parties;
>
> b) Upon the death of the Employee;
>
> c) Either party may terminate this Agreement upon (90) days' written notice;
>
> d) In addition, Employer shall have the right to terminate the Agreement immediately upon the occurrence of any one of the following events:
>
> 1) The revocation or suspension of the Employee's license to practice dentistry in the State of South Dakota;
>
> 2) The expulsion, suspension or disciplining of Employee as the final action of any professional or scientific organization;

> 3) The resignation by the Employee from any professional or scientific organization while under the threat of disciplinary action;
>
> 4) The conviction of the Employee of any crime punishably [sic] as a felony involving moral turpitude or immoral conduct; and
>
> 5) Withdrawal of staff appointment at any of the hospitals at which the Employee is to perform services for professional misconduct and/or as a result of disciplinary action;
>
> e) Upon the insolvency or bankruptcy of the Employer;
>
> f) Upon the occurrence of physical or mental disability of Employee to such an extent the Employee is unable to carry on a substantial portion of Employee's usual and customary duties and such inability continues for a period of three (3) months.

Since none of the listed events of termination occurred, the court found that neither party *terminated* the contract; thus, Vollmer was not required to purchase tail coverage under the terms of the contract. The trial court's letter decision stated:

> The parties defined the "Events of Termination" in their agreement. The "ending" or "natural expiration" of the contract was not one of the "Events of Termination." As a result, when the Employment Agreement between the parties expired or ended, plaintiff was relieved from purchasing "tail" liability insurance.

We agree with the trial court.

■ [¶ 6.] A contract is interpreted "according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation." *Citibank (S.D.), N.A. v.*

*Hauff,* 2003 SD 99, ¶ 12, 668 N.W.2d 528, 533 (citations and quotations omitted). This Court will not "seek out a strained or unusual meaning for the benefit of one party." *Id.* Here the natural and obvious import of the language of the contract is that the "natural expiration" of the contract did not constitute a *termination* of the employment agreement.

[¶ 7.] Support for this interpretation is further bolstered by the contract provision which uses the term "natural expiration" to describe the end of the one-year contract. The contract provision states:

> If all parties to this Agreement desire, a second one year agreement will be negotiated and agreed upon not later than 6 months prior to the *natural expiration* of this Employment term.

(Emphasis added.) Based on the language of the contract, Vollmer only incurred a duty to purchase tail coverage if the employment agreement was cut short or otherwise terminated as defined in the "Events of Termination" provision of the agreement, and he was not required to do so upon the "natural expiration" of the contract.

[¶ 8.] Associates also argue that the contract provision which allows the contract to be terminated by written mutual agreement of the parties applies. Associates assert that the employment agreement itself is a "mutual written agreement of the parties" to terminate the employment agreement, and therefore qualifies as an event of termination. The obvious meaning of the provision is that the parties may terminate the employment agreement by subsequently entering into a separate written agreement to do so. The original employment agreement was simply an agreement to enter into an employment arrangement. It was not an agreement to terminate employment. To interpret it as such would be a forced construction not in accord with the natural and obvious import of the language.

*Ambiguity & Disputed Material Facts*

[¶ 9.] Alternatively, Associates claim the contract is ambiguous and the court should look to extrinsic evidence to determine the meaning of the term "terminate." First, Associates urge us to look beyond the contract language to statutes and other caselaw for a definition of "termination." Second, Associates argue the ambiguity precludes summary judgment and creates a question of fact. In support of this position Associates point to the affidavit of Rob Hollan, the drafter of the agreement for Associates. Hollan provided an affidavit concerning the intent of the parties as to the tail coverage. This Court has stated, "when there is an ambiguous contract, evidence must be introduced to determine what the intentions of the parties were and ... such evidence creates a question of fact, which must be resolved by the jury." *North River Ins. Co. v. Golden Rule Const. Inc.,* 296 N.W.2d 910, 912 (S.D.1980) (quoting *Delzer Const. Co. v. South Dakota State Bd. of Transp.,* 275 N.W.2d 352, 355 (S.D.1979)). However, we have also stated that "before extrinsic matters can be examined to determine the parties' intent, a provision must be ambiguous." *Ducheneaux v. Miller,* 488 N.W.2d 902, 909 (S.D.1992). Ambiguity is shown where the contract "is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Pesicka v. Pesicka,* 2000 SD 137, ¶ 10, 618 N.W.2d 725, 727. Further, "[a]mbiguity is not created merely because the parties offer different interpretations of the contract." *Roden v. Gen. Cas. Co. of Wisconsin,* 2003 SD 130, ¶ 10, 671 N.W.2d 622, 625. "When a contract is unambiguous and clear, we determine the

parties' intent from the four corners of the document and extrinsic evidence is not needed." *Icehouse, Inc. v. Geissler*, 2001 SD 134, ¶ 13, 636 N.W.2d 459, 463.

[¶ 10.] Here, the contract is unambiguous and clear. There is no ambiguity and one was not created merely because Associates offer a different interpretation of the contract. The trial court's grant of summary judgment is affirmed.

[¶ 11.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.