#25762-rev & rem-DG

**2011 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

GAIL M. BENSON LIVING TRUST,
LENORE G.L. JOHNSON LIVING
TRUST, SANFORD CLINIC, WILLIAM
WATSON, M.D.,                                    Plaintiffs and Appellants,

and

JEFFREY B. HAGEN, M.D.,                          Plaintiff,

v.

PHYSICIANS OFFICE BUILDING, INC.,
JEREMIAH D. MURPHY,                              Defendants and Appellees,

and

ALFRED E. HARTMANN, M.D.,
RADIOLOGIC PARTNERS, ROBERT E.
VANDEMARK, JR., M.D. and SISTERS
OF THE PRESENTATION OF THE
BLESSED VIRGIN MARY OF ABERDEEN,
SOUTH DAKOTA,                                    Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE KATHLEEN K. CALDWELL
Judge

* * * *

CONSIDERED ON BRIEFS
ON MAY 23, 2011

OPINION FILED **06/29/11**

KENT R. CUTLER
DAVID L. EDWARDS
KIMBERLY R. WASSINK of
Cutler & Donahoe, LLP
Sioux Falls, South Dakota

Attorneys for plaintiffs
and appellants.


JAMES E. McMAHON
ROCHELLE R. SWEETMAN of
Murphy, Goldammer & Prendergast, LLP
Sioux Falls, South Dakota

Attorneys for defendants
and appellees.

GILBERTSON, Chief Justice

[¶1.]     Limited partners brought suit against general partners seeking a declaratory judgment that the general partners' change in allocation of the limited partnership's profits and losses violated the partnership agreement. After considering cross-motions for summary judgment, the circuit court granted summary judgment in favor of the general partners. The limited partners appeal. We reverse and remand.

## FACTS

[¶2.]     A limited partnership, POB Associates, was formed in 1980 for the purpose of "constructing, owning, maintaining, and operating" an office building on the Avera McKennan Hospital campus in Sioux Falls, South Dakota. This building, known as the Physicians Office Building, is the primary asset of POB Associates.

[¶3.]     The two general partners of POB Associates are attorney Jeremiah Murphy[1] and a non-profit corporation, POB, Inc. (collectively "General Partners"). The president and director of POB, Inc. was Murphy. The beneficiary of POB, Inc. is Presentation Sisters, Inc., the former corporate name for Avera McKennan. Murphy worked for Avera McKennan for over 15 years as a lobbyist, served on its board, and represented it in other legal matters. Murphy and other lawyers in his firm drafted the POB Associates' Certificate and Limited Partnership Agreement (Partnership Agreement).

---

1.     While not affecting the outcome, we note that Murphy, an attorney from Sioux Falls, passed away while this appeal was pending.

[¶4.]      POB Associates was authorized to sell 32 limited partnership "units" for $15,000 each.  It is undisputed that only 15 of the authorized units were sold.  The nine Limited Partners owned all 15 of these units.[2]  None of the General Partners have purchased any partnership units, have invested any money in the partnership, or paid any liabilities on the partnership's behalf.  The General Partners had full, exclusive, and complete discretion in the management and control of POB Associates, including the sale of partnership units.

[¶5.]      The allocation of POB Associates' profits and losses is governed by Article I, § 1.06(b) of the Partnership Agreement.  It provides:

> All such profits and losses in the years 1980, 1981, and 1982 shall be allocated to the [L]imited [P]artners prorata in accordance with the number of partnership units held by each. Commencing in 1983, all profits and losses will be allocated among the General Partners and Limited Partners in accordance with the number of partnership units held by each. In 1983 and in each year thereafter, each [L]imited [P]artner will be allocated 1/32 of 98% of the profits and losses for each partnership unit.  The General Partners will be allocated in 1983 and each year thereafter all other profits and losses, except that General Partner Jeremiah Murphy will in no year receive more than 1% of the profits and losses.  The percentage of profits and losses allocated to the General Partners will never be reduced below 2%.

[¶6.]      From 1980 to 1982, the allocation followed the first sentence of § 1.06(b), as the distribution was apportioned "prorata in accordance with the number of partnership units held by each."  From 1983 to 2007, the General Partners annually allocated 98% of POB Associates' profits and losses to the Limited

---

2.    The identity of the Limited Partners is not relevant on appeal.  They will collectively be referred to as "Limited Partners."  Some of the partnership units have been transferred or otherwise distributed since their initial purchase.  All necessary parties were made a part of this action.

Partners in accordance with the number of units held by each. Because only 15 units had been sold, each unit was allocated 1/15th of 98% of the profits and losses from each year. This allocation followed the second sentence of § 1.06(b). Consistent with the fourth and fifth sentences, the General Partners were allocated the remaining 2%. The 17 unsold and unissued units were not considered in the allocation formula.

[¶7.]    In 2008, the General Partners adopted a new allocation formula based on a new interpretation of § 1.06(b). Murphy stated in a letter that he believed the profits and losses had been improperly allocated since 1983. No explanation was provided other than an intention to rely on the third sentence of § 1.06(b). Under this new formula, 46% of POB Associates' profits and losses were allocated to the Limited Partners; the remaining 54% was allocated to the General Partners, although Murphy received no more than 1%. This decision reallocated 17/32 of 98% of the profits and losses to General Partner POB, Inc., thereby attributing ownership of the 17 unissued and unsold units to that partner. The Limited Partners' interests were reduced to 1/32 of 98% for each unit that a Limited Partner held. Murphy received 1% of the profits and losses regardless of how many units were sold.

[¶8.]    Several Limited Partners sued the General Partners in March 2009. The Limited Partners alleged breach of contract, breach of fiduciary duty, and requested a declaratory judgment in their favor regarding the allocation under the Partnership Agreement. Both parties filed cross-motions for summary judgment regarding allocation under § 1.06(b). The circuit court granted summary judgment

in favor of the General Partners.  On appeal, the issue is whether the circuit court erred in granting summary judgment.

## STANDARD OF REVIEW

[¶9.]    Our standard of review for a motion for summary judgment is settled.

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided.  All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party.  The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*W. Consol. Coop. v. Pew*, 2011 S.D. 9, ¶ 19, 795 N.W.2d 390, 396 (quoting *Discover Bank v. Stanley*, 2008 S.D. 111, ¶ 16, 757 N.W.2d 756, 761-62).

## ANALYSIS

[¶10.]    The circuit court granted summary judgment in favor of the General Partners after concluding that § 1.06(b) was unambiguous.  The circuit court explained that the second sentence of § 1.06(b), "[c]ommencing in 1983, all profits and losses will be allocated among the General Partners and Limited Partners in accordance with the number of partnership units held by each," provides the "numerator for how profits and losses are supposed to be calculated."  The third sentence, "[i]n 1983 and in each year thereafter, each [L]imited [P]artner will be allocated 1/32 of 98% of the profits and losses for each partnership unit," provides the "denominator for how partnership units are allocated."  The circuit court stated that:

> the only way one can read Section 1.06(b) is how [the General Partners] read this section and therefore, the Partnership Agreement is unambiguous. When reading Section 1.06(b) in its entirety, it is unambiguous that the document is drafted in such a way that starting in 1983 the Limited Partners would receive 1/32 of 98% of the profits and losses for each partnership unit they own. . . . Although the parties offer different interpretations of the contract, the intent of the contract is nevertheless unambiguous.

The circuit court later clarified its decision, finding "that neither Murphy nor POB, Inc. has ever held one of [the partnership] units[;] however, the unsold units, while not owned by either the Limited Partners or the General Partners, were in essence in limbo and the General Partners were entitled to the profits and responsible for any losses while these units were unsold."

[¶11.]     This Court has previously stated that:

> [a] contract is not rendered ambiguous simply because the parties do not agree on its proper construction or their intent upon executing the contract. Rather, a contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.

*Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 10, 618 N.W.2d 725, 727 (quoting *Singpiel v. Morris*, 1998 S.D. 86, ¶ 16, 582 N.W.2d 715, 719).  Consequently, we review § 1.06(b) to determine whether it is capable of more than one meaning when viewed by a reasonably intelligent person who has examined the entire agreement.  We do so "according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation."  *Vollmer v. Akerson*, 2004 S.D. 111, ¶ 6, 688 N.W.2d 225, 228 (quoting *Citibank (S.D.) N.A. v. Hauff*, 2003 S.D. 99, ¶ 12, 668 N.W.2d 528, 533).

[¶12.] In reviewing the second and third sentences of § 1.06(b) along with the undisputed fact that only 15 of the possible 32 units were sold, we conclude that the language is ambiguous. If allocation is made under the second sentence, all profits and losses would be "allocated among the General Partners and Limited Partners in accordance with the number of partnership units held by each." The problem with this sentence is that the General Partners do not own any partnership units, yet they do share in the profits and losses as provided in the final two sentences of § 1.06(b). If allocation is made under the third sentence, then "each [L]imited [P]artner will be allocated 1/32 of 98% of the profits and losses for each partnership unit." Here, only 15 of the 32 units were sold. The resulting problem with allocation under the third sentence is that it does not account for the 17 unissued units.

[¶13.] Allocation can be made following either the second sentence or the third sentence, but not both. If all 32 units had been sold, there would not be a conflict. This ambiguity is supported by the change in allocations. The General Partners distributed profits and losses according to the second sentence from 1983 to 2007. Beginning in 2008, however, the distribution followed the third sentence. This history, the parties' arguments, and our own review indicate that § 1.06(b) is capable of more than one meaning when viewed by a reasonably intelligent person who has examined the entire agreement.

[¶14.] We will affirm a grant of summary judgment only when all legal questions have been correctly decided. *W. Consol. Coop.*, 2011 S.D. 9, ¶ 19, 795 N.W.2d at 396. "Whether the language of a contract is ambiguous is . . . a question

of law." *Union Pacific R.R. v. Certain Underwriters of Lloyd's London*, 2009 S.D. 70, ¶ 16, 771 N.W.2d 611, 616 (quoting *All Star Const. Co., Inc. v. Koehn*, 2007 S.D. 111, ¶ 33, 741 N.W.2d 736, 744). In this case, the legal question whether the Partnership Agreement is ambiguous was incorrectly decided. Therefore, the circuit court's grant of summary judgment in favor of the General Partners is reversed.

[¶15.]     The Limited Partners assert that if this Court reverses, remand is not necessary. The Limited Partners argue that rules of contract construction allow this Court to resolve the ambiguity of § 1.06(b) in their favor as a matter of law. The first rule the Limited Partners ask this Court to apply is that "the construction given by the parties themselves to the contract as shown by their acts, if reasonable, will be accorded great weight and usually will be adopted by the court." *Malcom v. Malcom*, 365 N.W.2d 863, 865 (S.D. 1985). The second rule is that "ambiguities arising in a contract should be interpreted and construed against the scrivener." *Campion v. Parkview Apartments*, 1999 S.D. 10, ¶ 34, 588 N.W.2d 897, 904 (quoting *Prod. Credit Ass'n of the Midlands v. Wynne*, 474 N.W.2d 735, 740 (S.D. 1991).

[¶16.]     This Court has stated that "when there is an ambiguous contract, evidence must be introduced to determine what the intentions of the parties were and . . . such evidence creates a question of fact, which must be resolved by the jury." *Vollmer*, 2004 S.D. 111, ¶ 9, 688 N.W.2d at 229 (citing *North River Ins. Co. v. Golden Rule Const. Inc.*, 296 N.W.2d 910, 912 (S.D. 1980)). Because we have determined that the Partnership Agreement is ambiguous concerning allocation, it is appropriate to reverse and remand the circuit court's grant of summary judgment to allow the introduction of evidence regarding the intentions of the parties.

## CONCLUSION

[¶17.]     Because the Partnership Agreement is capable of more than one meaning under the undisputed facts of this case, the circuit court's grant of summary judgment is reversed and remanded.

[¶18.]     KONENKAMP, ZINTER, and SEVERSON, Justices, and MEIERHENRY, Retired Justice, concur.