#27386, #27402-rev & rem-GAS
**2016 S.D. 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARLEN J. LASKA and
PATRICIA A. LASKA,                                        Plaintiffs and Appellees,


v.


JERRY BARR, PAT COLE
and GERRIT JUFFER,                                        Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK SMITH
Judge

\* \* \* \*

TIMOTHY R. WHALEN
Lake Andes, South Dakota                          Attorney for plaintiffs
                                                                        and appellees.



THOMAS H. FRIEBERG of
Frieberg, Nelson & Ask, LLP
Beresford, South Dakota

        and

MEGHANN M. JOYCE of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                           Attorneys for defendants
                                                                        and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 11, 2016
OPINION FILED **02/10/16**

SEVERSON, Justice

[¶1.]     Marlen and Patricia Laska entered into a contract, involving real property owned by them, with Jerry Barr, Pat Cole, and Gerrit Juffer (the Barr Partners). The Barr Partners, believing the contract created an option, attempted to buy the property listed in the contract. The Laskas did not want to sell and brought this action seeking to declare the contract void; the Barr Partners counterclaimed, seeking specific performance of the agreement. The circuit court determined that the contract granted the Barr Partners a right of first refusal and limited their rights under the contract, determining that the preemptive right expired at the later death of Marlen or Patricia. On appeal, the Barr Partners allege that the contract creates both an option and a right of first refusal. Through notice of review, the Laskas contend that the agreement is void for lack of a definite time within which the parties may exercise rights under the contract and for lack of mutual assent. We reverse and remand.

## Background

[¶2.]     The Laskas first sold real property to the Barr Partners in 2000. The sale is referred to as *Juffer 1* by the parties and circuit court. At the time of closing on Juffer 1, the parties entered into an agreement entitled *First Right of Refusal*, which granted the Barr Partners certain rights to purchase additional land that is adjacent to *Juffer 1*. In late 2004, the Barr Partners bought the real property listed in the *First Right of Refusal*, referred to as *Juffer 2*. However, they paid $500 more per acre than the price listed in the agreement. As part of the *Juffer 2* sale, the parties entered into another agreement, again entitled *First Right of Refusal*. The

-1-

second agreement is substantially similar to the initial *First Right of Refusal* that the parties executed and involves real property that is adjacent to the *Juffer 2* property.  The meaning of the second agreement is the main dispute of this case.

[¶3.]      The "First Right of Refusal" in dispute provides in relevant parts:

> In consideration of the receipt of One dollar ($1.00) and other good and valuable consideration paid to Marlin [sic] and Patricia Laska . . . SELLER, receipt of which is hereby acknowledged, SELLER hereby gives and grants to Jerry Barr or, Pat Cole or, Gerrit Juffer, BUYER, their heirs and assigns, a right of first refusal to purchase the real property owned by SELLER situated in Charles Mix County, South Dakota, and more particularly described as follows:
>
>          . . . .
>
> ### Section I
> ### Price and Terms of Payment
>
> The purchase price for the property shall be Ten thousand Dollars Five hundred and no/100 ($10,500) per acre purchased pursuant to this right of first refusal, or portion thereof Upon exercise of this right of first refusal by BUYER as provided for herein, BUYER shall pay SELLER the sum of One dollar, ($1.00) as and for down payment to be applied towards the total purchase price, which sum shall be non-refundable except should SELLER be unable to provide BUYER with marketable title as required herein.
>
> ### Section II
> ### Period of Right and Extension
>
> Should SELLER receive a bona fide third party offer to purchase all or a portion of the above-described property, SELLER shall give BUYER written notice of the offer including its material terms within ten (10) days of receiving the offer. BUYER may then exercise this right of first refusal by giving SELLER written notice thereof within ten (10) days of receiving said notice by SELLER of said third party offer.
>
>          . . . .
>
> ### Section VI
> ### Assignment and Succession
>
> This right and the contract resulting from the exercise thereof shall bind to the benefit of the heirs, successors,

> administrators, and executors of the respective parties.  Buyer
> may not assign any rights under this right of first refusal
> without the express written consent of SELLER, which consent
> may not be unreasonably withheld.  One of the buyers is a Real
> Estate Broker.

Section VII
Lapse

> Should BUYER fail to exercise this right by giving the
> appropriate notice, said right shall lapse and be in no further
> force or effect whatsoever.

[¶4.]     At trial, the Barr Partners contended that the agreement above created a "dual option" wherein they have both the option to buy the property at any time for $10,500 per acre and they have the right to meet the price of any bona fide third-party offer.  Additionally, the Barr Partners asserted that this right extends beyond the lives of the contracting parties.  The Laskas contended that the contract is ambiguous and void for lack of a time of performance and lack of mutual assent.*  The circuit court determined that the contract was unambiguous.  It found that the contract created only a right of first refusal at the fixed price of $10,500 per acre and that it terminated at the later death of Marlen or Patricia.  On appeal, the Barr Partners contend that the circuit court erred by finding that the contract only created a right of first refusal and by limiting the contract to the later death of Marlen or Patricia.  By way of notice of review, the Laskas contend that the agreement is void for lack of mutual assent and failure to include a time for performance.

---

\*     The Laskas argued at trial that the agreement also lacked consideration. However, it does not appear that they are still making that argument on appeal.

## Analysis

[¶5.] "Contract interpretation is a question of law reviewable de novo." *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354. "When the meaning of contractual language is plain and unambiguous, construction is not necessary. If a contract is found to be ambiguous the rules of construction apply." *Id.* (quoting *Pesicka v. Pesicka*, 2000 S.D. 137, ¶ 6, 618 N.W.2d 725, 726). "A contract is ambiguous when application of rules of interpretation leaves a genuine uncertainty as to which of two or more meanings is correct." *Dowling Family P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 13, 865 N.W.2d 854, 860 (quoting *Ziegler*, 2006 S.D. 6, ¶ 16, 709 N.W.2d at 355). "[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Id.* (quoting *Pesicka*, 2000 S.D. 137, ¶ 10, 618 N.W.2d at 727).

[¶6.] The parties dispute whether this agreement constitutes a right of first refusal, an option, or both. "An option to purchase real property may be defined as a contract by which an owner of real property agrees with another person that the latter shall have the privilege of buying the property at a specified price within a specified time, or within a reasonable time." *Ziegler*, 2006 S.D. 6, ¶ 17, 709 N.W.2d at 355 (quoting *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312, 314 (S.D. 1980)). "In contrast to an option, a 'right of first refusal is a conditional right that ripens into an enforceable option contract when the owner receives a third-party offer to purchase or lease the property subject to the right and manifests an intention to sell or lease on those terms.'" *Dowling Family P'ship*, 2015 S.D. 50, ¶ 16, 865 N.W.2d at 861

(quoting *Advanced Recycling Sys., LLC v. Se. Props. Ltd. P'ship*, 2010 S.D. 70, ¶ 15, 787 N.W.2d 778, 784).

[¶7.]        Unlike the circuit court, we determine that the agreement executed by the parties is an ambiguous one.  The parties consistently refer to the right created by the agreement as a "right of first refusal," however, the agreement provides that the "purchase price . . . shall be Ten thousand Dollars Five hundred[.]"  It does not provide for the Barr Partners to match any third-party offer.  On its own, a stipulated or fixed price does not necessarily render a right of first refusal ambiguous.  *See Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n One, Inc.*, 986 So. 2d 1279, 1285 (Fl. 2008) (citations omitted) ("Rights of first refusal are also known as preemptive rights.  Such rights vary in form: some require offering the property at a fixed price (or some price below market value), while others . . . simply allow the holder to purchase the property on the same terms as a third party."); *Stuart v. D'ascenz*, 22 P.3d 540, 542 (Colo. App. 2000) (citations omitted) ("Although options are often linked to stipulated prices, and rights of first refusals (or pre-emptive rights) to third party offers, neither stipulated prices nor third party considerations determine whether a particular clause is an option or a right of first refusal.").  However, this contract is unclear as to whether it creates a right of first refusal, even at a stipulated price.  Although it provides that the Laskas must inform the Barr Partners of a third-party offer, it does not provide that the Laskas must be willing to sell the property to the third-party.  It provides: "Should SELLER receive a bona fide third party offer to purchase . . . SELLER shall give BUYER written notice of the offer . . . .  BUYER may then exercise this right of first

refusal . . . within ten (10) days[.]" Under Section II of the contract, the right of the Barr Partners to purchase the property is conditioned solely on the receipt of a bona fide third-party offer, regardless of the Laskas' intent to sell. This is neither consistent with a right of first refusal nor an option contract. While conditioning the Barr Partners' rights on a third-party offer is akin to a preemptive right, forcing the Laskas to sell, regardless of intent to sell, is more consistent with an option contract. Because of this language, if this contract would be construed as a right of first refusal, we cannot determine whether the price is $10,500 per acre or whether the Barr Partners may match a third-party offer.

[¶8.] The Barr Partners contend that the agreement created a "dual option" as we recognized in *Crowley v. Texaco, Inc.*, 306 N.W.2d 871 (S.D. 1981). According to the Barr Partners, if the Laskas receive a third-party offer, the Barr Partners can match that price; if the Laskas do not receive an offer before the Barr Partners want to buy the property, then the Barr Partners can buy it at $10,500 per acre. However, the contract in this case does not refer to multiple rights granted to the Barr Partners. It repeatedly refers to a singular right created under the contract as "this right." *See, e.g.*, Sections VI, VII (emphasis added) ("This right . . . shall bind to the benefit of the heirs . . . . Buyer may not assign any rights under *this right* . . . . Should BUYER fail to exercise *this right* by giving the appropriate notice[.]"). Moreover, nothing within the contract provides that the Barr Partners may purchase the property "at any time," as they contend. The contract simply grants them "a right of first refusal to purchase the real property" and conditions such right to purchase the property on the receipt of a bona fide third-party offer.

Lastly, although the Barr Partners maintain that the contract allows them to match any price of a bona fide third-party offer, no provision gives them the right to do so, as would be consistent with a right of first refusal. Consequently, it is unclear what right this contract is meant to give the Barr Partners. The parties may have misunderstood the term "right of first refusal," and this Court cannot declare what rights exist under this contract.

[¶9.] The circuit court found the contract to be unambiguous. Consequently, it did not consider parol evidence or make findings thereon. We have previously explained that "when there is an ambiguous contract, evidence must be introduced to determine what the intentions of the parties were and . . . such evidence creates a question of fact[.]" *Gail M. Benson Living Tr. v. Physicians Office Bldg., Inc.*, 2011 S.D. 30, ¶ 16, 800 N.W.2d 340, 344 (quoting *Vollmer v. Akerson*, 2004 S.D. 111, ¶ 9, 688 N.W.2d 225, 229). Therefore, we remand to the circuit court to consider extrinsic evidence and determine the parties' intent. *See id.* (finding a contract ambiguous and remanding "to allow the introduction of evidence regarding the intentions of the parties").

[¶10.] Regardless of its nature as an option or right of first refusal, the Laskas contend that the contract is void for failure to include a time of performance. They contend that the contract continues indefinitely because it survives the death of the contracting parties. The Barr Partners maintain that the parties clearly intended for the contract to survive the parties' deaths because the contract provides: "This right and the contract resulting from the exercise thereof shall bind to the benefit of the heirs, successors, administrators, and executors of the

-7-

respective parties." Therefore, the parties agree that the contract is meant to survive the deaths of all the parties. They disagree on the result of such a contract. In support of their contention that failure to provide for a time of performance voids the contract, the Laskas rely on *Kuhfeld*, where we said: "An option which is intended by its parties to run for an unlimited time is void; however, an option which is to remain open for a limited time, but in which no time is stated, is valid." 292 N.W.2d at 314. We also explained that "[t]here is a strong tendency to construe an option or preemption right to be limited to the lives of the parties, unless there is clear evidence of a contrary intent." *Id.* at 315 (citing *Old Mission Peninsula Sch. Dist. v. French*, 107 N.W.2d 758 (Mich. 1961)). *See also* 92 C.J.S. Vendor and Purchaser § 166 (2015) ("An option for an indefinite term is not enforceable.").

[¶11.] We agree that the contract clearly provides that it is meant to survive the parties' death. However, the authority we cited in *Kuhfeld* in support of our position—a strong tendency to construe an option or preemption right to be limited to the lives of the parties, unless there is clear evidence of a contrary intent—does not provide that a clear intention to the contrary saves such an agreement. Instead, the authority we relied on explained that, if the parties clearly make the right of preemption descendible, "the right would have to be weighed against the common-law prohibition on restraints on alienation and the rule against perpetuities[.]" *Old Mission Peninsula Sch. Dist.*, 107 N.W.2d at 760 (citations omitted). South Dakota has abolished the common law rule against perpetuities. *See* SDCL 43-5-8. However, SDCL 43-3-5 provides: "Conditions restraining alienation, when repugnant to the interest created, are void." Therefore, it must be determined

whether the agreement constitutes an unreasonable restraint against alienation. *See Edgar v. Hunt*, 706 P.2d 120, 122 (Mont. 1985) (citations omitted) (construing statute identical to SDCL 43-3-5 "as a statement of the majority common law rule that restraints on alienation, when reasonable, are valid. The question is whether the particular restraint is reasonable under the circumstances."). SDCL 43-5-1 also provides:

> The absolute power of alienation may not be suspended by any limitation or condition whatever for a longer period than during the continuance of the lives of persons in being plus a period of thirty years at the creation of the limitation or condition, except in the single case mentioned in § 43-9-5 relating to contingent fee remainder on a prior fee remainder.

[¶12.]     Neither the parties nor the circuit court considered whether this agreement constitutes an unreasonable restraint against alienation or whether it may constitute a suspension of the absolute power of alienation. *See* SDCL 43-3-5, SDCL 43-5-1 to -2. Nor have they briefed the issue and presented it to us. Therefore, on remand, the parties and the court must also address whether the parties may bind the respective heirs of the contracting parties to this contract.

[¶13.]     We remand to the circuit court to consider extrinsic evidence and to determine the parties' intent.

[¶14.]     GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN, Justices, concur.