#28094-a-LSW
**2018 S.D. 6**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MARLEN J. LASKA and
PATRICIA A. LASKA,                                    Plaintiffs and Appellees,

          v.

JERRY BARR, PAT COLE and                     Defendants and Appellants.
GERRIT JUFFER,

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
CHARLES MIX COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICK T. SMITH
Judge

\* \* \* \*

TIMOTHY R. WHALEN
Lake Andes, South Dakota                      Attorney for plaintiffs and
                                                              appellees.


RONALD A. PARSONS, JR. of
Johnson Janklow Abdallah
    & Reiter, LLP
Sioux Falls, South Dakota

and

THOMAS H. FRIEBERG of
Frieberg, Nelson & Ask, LLP
Beresford, South Dakota

and

MEGHANN M. JOYCE of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                      Attorneys for defendants and
                                                              appellants.

\* \* \* \*

CONSIDERED ON BRIEFS ON
NOVEMBER 6, 2017
OPINION FILED **01/24/18**

#28094

WILBUR, Retired Justice

[¶1.]     In this second appeal regarding a contract dispute, we consider whether the circuit court erred on remand when it held that the contract created a right of first refusal and when it held that the contract was void as an unreasonable restraint against alienation.  We affirm.

## Background

[¶2.]     Marlen and Patricia Laska executed multiple agreements with Jerry Barr, Pat Cole, and Gerrit Juffer (the Barr Partners) involving real estate in Charles Mix County, South Dakota.  This appeal concerns an agreement entered into on February 3, 2005.  The agreement is titled, "Right of First Refusal."  It provides in relevant part:

> In consideration of the receipt of One dollar ($1.00) and other good and valuable consideration paid to Marlin [sic] and Patricia Laska . . . SELLER, receipt of which is hereby acknowledged, SELLER hereby gives and grants to Jerry Barr or, Pat Cole or, Gerrit Juffer, BUYER, their heirs and assigns, a right of first refusal to purchase the real property owned by SELLER situated in Charles Mix County, South Dakota, and more particularly described as follows:
>
>     . . . .
>
> Section I
> Price and Terms of Payment
>
> The purchase price for the property shall be Ten thousand Dollars Five hundred and no/100 ($10,500.00) per acre purchased pursuant to this right of first refusal, or portion thereof Upon exercise of this right of first refusal by BUYER as provided for herein, BUYER shall pay SELLER the sum of One dollar, ($1.00) as and for down payment to be applied towards the total purchase price, which sum shall be non-refundable except should SELLER be unable to provide BUYER with marketable title as required herein.

-1-

### Section II
### Period of Right and Extension

Should SELLER receive a bona fide third party offer to purchase all or a portion of the above-described property, SELLER shall give BUYER written notice of the offer including its material terms within ten (10) days of receiving the offer. BUYER may then exercise this right of first refusal by giving SELLER written notice thereof within ten (10) days of receiving said notice by SELLER of said third party offer.

. . . .

### Section VI
### Assignment and Succession

This right and the contract resulting from the exercise thereof shall bind to the benefit of the heirs, successors, administrators, and executors of the respective parties. Buyer may not assign any rights under this right of first refusal without the express written consent of SELLER, which consent may not be unreasonably withheld. One of the buyers is a Real Estate Broker.

### Section VII
### Lapse

Should BUYER fail to exercise this right by giving the appropriate notice, said right shall lapse and be in no further force or effect whatsoever.

[¶3.] In 2011, the Laskas asked the Barr Partners to release their interest in the property under the Right of First Refusal. The Barr Partners refused, and the Laskas brought a declaratory judgment action. The Laskas claimed that the agreement granted the Barr Partners a right of first refusal but that the right was void and invalid at its inception. In response, the Barr Partners asserted that the agreement was ambiguous and that the parties intended to create a dual-option agreement.

[¶4.] The circuit court held a trial in 2014. It found the language of the agreement unambiguous. The court concluded that the agreement granted the Barr Partners a right of first refusal, which terminated upon the deaths of Marlen and Patricia. The Barr Partners appealed the court's decision to this Court. They asserted that the circuit court erred when it found the agreement unambiguous and when it limited the duration of the agreement to the deaths of Marlen and Patricia. The Laskas, by notice of review, asserted that the circuit court erred when it failed to declare the agreement void as an unreasonable restraint on alienation.

[¶5.] We reviewed the 2005 agreement and found it ambiguous as to whether it created a right of first refusal, an option, or a dual option. *Laska v. Barr*, 2016 S.D. 13, ¶ 8, 876 N.W.2d 50, 54. We noted that the agreement provided language consistent with an option and a right of first refusal. It contained a stipulated purchase price and did not require the Barr Partners to match any third-party offer. But it also conditioned the Barr Partners' right to purchase on a third-party offer and referred to the Barr Partners' right as a right of first refusal. So "we remand[ed] to the circuit court to consider extrinsic evidence and determine the parties' intent." *Id.* ¶ 9. We also said that "it must be determined whether the agreement constitutes an unreasonable restraint on alienation" because the clear language of the agreement indicated that it survived the deaths of the parties. *Id.* ¶ 11.

[¶6.] On remand, the circuit court considered parol evidence previously received during the 2014 trial and additional briefing submitted by the parties. The evidence and subsequent submissions established that the Laskas owned

approximately 120 acres of land near the Missouri River in Charles Mix County, South Dakota. The Barr Partners desired to purchase a portion of the Laskas' property for their Sand Dollar Cove development. They testified that their plan included three purchases. It is undisputed that in 2000, the Laskas and the Barr Partners entered into a purchase agreement for the sale of approximately thirteen acres. The parties referred to this sale as Juffer One. At closing, the parties also entered into an agreement titled, "Right of First Refusal." The right of first refusal concerned an additional thirteen acres referred to as Juffer Two. The 2000 Right of First Refusal purported to give the Barr Partners the right to buy Juffer Two for $10,000 per acre.

[¶7.]        In 2004, the Barr Partners informed the Laskas that they wanted to purchase Juffer Two under the terms of the right of first refusal. The parties dispute the circumstances surrounding the purchase of Juffer Two. According to the Barr Partners, they purchased Juffer Two by exercising their option under the right of first refusal. They also claimed that they made clear to the Laskas that they would not purchase Juffer Two without an additional option and right of first refusal to purchase Juffer Three. The Laskas, however, claimed that they refused to sell Juffer Two to the Barr Partners under the terms of the right of first refusal. According to the Laskas, the parties negotiated new terms to complete the sale. It is undisputed that the Barr Partners purchased Juffer Two from the Laskas in 2005 for a price different than that stated in the 2000 Right of First Refusal.

[¶8.]        At the closing on Juffer Two, the parties also signed the 2005 Right of First Refusal disputed in this case concerning Juffer Three. According to the Barr

Partners, the 2005 Right of First Refusal gave them both an option and a right of first refusal to purchase Juffer Three. They testified that they relied on this agreement to pay for constructing roads, for leveling, for power, and for electricity to serve the entire Sand Dollar Cove development. The Laskas responded that the Barr Partners' developments were only within the confines of their purchased parcels and that the Laskas had paid for major developments in the area, including potable water, culverts for access road development, and securing the necessary access roadway. The Laskas also developed a campground on a parcel abutting the twenty acres comprising Juffer Three. An aerial photograph submitted at trial depicted the Laskas' development (Curly's Campground) on one end, the Sand Dollar Cove development (Juffer One and Juffer Two) on the other end, and the undeveloped twenty acres (Juffer Three) between Curly's Campground and the Sand Dollar Cove development.

[¶9.] It is undisputed that around 2011, the Laskas asked the Barr Partners to release their contractual interest in Juffer Three. The Barr Partners claimed that the Laskas made this request because they "came to regret granting the Barr Partners" the right to purchase Juffer Three after the Laskas developed Curly's Campground. The Barr Partners declined to release their interest and instead told the Laskas that they intended to exercise their option to purchase Juffer Three in the next couple years to complete the Sand Dollar Cove development. As previously indicated, the Laskas brought a declaratory judgment action to void the 2005 Right of First Refusal.

[¶10.]     On remand from this Court, the Barr Partners continued to assert that the 2005 Right of First Refusal was a dual-option agreement. In consideration of the above parol evidence, the circuit court found that the parties were confused as to whether the 2005 Right of First Refusal created a dual option or a right of first refusal. One point of confusion, according to the court, existed because the Laskas believed that the 2000 Right of First Refusal was the same in many respects to the 2005 agreement. The court noted that unlike the 2000 Right of First Refusal, which granted the right to purchase to the Barr Partners collectively, the 2005 agreement unambiguously granted the right to purchase to *any* of the Barr Partners individually.

[¶11.]     The court also highlighted Gerrit Juffer's testimony. Gerrit had been involved in real estate transactions for over three decades. He handled all of the negotiations and prepared all of the documents for the transactions between the Laskas and the Barr Partners, including drafting the 2005 Right of First Refusal. Gerrit testified that the sale of the additional twenty acres was contingent on the Laskas receiving an offer. He further explained that it was his understanding that if the Laskas received an offer, the Barr Partners would potentially be able to purchase the land at the same price offered by the third party (rather than the contract price). To the court, Gerrit's testimony supported the proposition that the parties intended to create a right of first refusal and not a dual option.

[¶12.]     As further support that the parties intended to create a right of first refusal in 2005, the court found compelling the fact that the sale of Juffer Two under the 2000 Right of First Refusal occurred after the parties negotiated a new

agreement. The court viewed the circumstances of the sale of Juffer Two to indicate that the Barr Partners did not have an option agreement under the 2000 Right of First Refusal and then surmised that the Barr Partners similarly did not have an option under the 2005 agreement.

[¶13.]     The court ultimately held that the 2005 Right of First Refusal gave the Barr Partners a right of first refusal and not an option to purchase. The circuit court then addressed whether the 2005 Right of First Refusal was void as an unreasonable restraint on alienation. The court relied on the Restatement (Third) of Property as a guideline. The Restatement provides that "[a] servitude that imposes a direct restraint on alienation of the burdened estate is invalid if the restraint is unreasonable. Reasonableness is determined by weighing the utility of the restraint against the injurious consequences of enforcing the restraint." Restatement (Third) of Prop.: Servitudes § 3.4 (Am. Law Inst. 2000).

[¶14.]     The court examined several factors related to the reasonableness of the restraint in this case. To the court, "the fact that the restraint could potentially run forever" weighed against enforceability. The court further found unreasonable that the restraint restricted an excessively large group of individuals—the Laskas individually and the Laskas' heirs, assigns, and successors. Because the terms of the parties' agreement and the evidence made "it clear this agreement was intended by the parties to be open forever," the court declared the 2005 Right of First Refusal void as an unreasonable restraint on alienation.

[¶15.]     The Barr Partners appeal, asserting the following issues:

> 1. The 2005 Right of First Refusal includes an option to purchase the property, entitling the Barr Partners to specific performance.

2. The contract is not an unreasonable restraint on alienation under SDCL 43-3-5.

3. Alternatively, the court erred when it refused to narrow the scope of the alienation to comply with SDCL 43-5-1 or another reasonable limitation.

**Standard of Review**

[¶16.] "Contract interpretation is a question of law reviewable de novo." *Laska*, 2016 S.D. 13, ¶ 5, 876 N.W.2d at 52 (quoting *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 14, 709 N.W.2d 350, 354). A circuit court's factual findings, however, are reviewed for clear error. *Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 16, 790 N.W.2d 52, 59. The application of those facts to the law is reviewed de novo. *Huether v. Mihm Transp. Co.*, 2014 S.D. 93, ¶ 14, 857 N.W.2d 854, 860.

**Analysis**

**1. Dual Option or Right of First Refusal**

[¶17.] The Barr Partners assert that the express terms of the agreement and parol evidence support the conclusion that the parties intended to create a dual-option agreement. They emphasize that the agreement sets forth a specific price and explains the conveyance of marketable title and closing on the sale. In their view, the circuit court rendered these provisions null and mere surplus by construing the agreement to be only a right of first refusal. They further assert that the evidence reinforces that the parties intended to create an option to purchase. Pat Cole testified that the agreement covered both an option to purchase and a right of first refusal. Similarly, Jerry Barr testified that the intent in executing the 2005

Right of First Refusal was to "make sure we have the next price locked down on the next tract." The Barr Partners claim that "if the Laskas receive another offer on Juffer Three, the Barr Partners must either exercise their option at the contractual price or else exercise their right of first refusal to match the offer made by the third party." The failure to exercise either within ten days of receiving notice of the third-party offer, according to the Barr Partners, would mean their option and right of first refusal expire. The Barr Partners concede that the agreement provides no termination date for the option to purchase, but they claim that the lack of a date "simply means that a reasonable time to exercise the option is implied."

[¶18.] In the first appeal, we recognized that the 2005 Right of First Refusal lacked elements of an option and elements of a right of first refusal. *Laska*, 2016 S.D. 13, ¶¶ 7-8, 876 N.W.2d at 53-54. We directed the circuit court to consider extrinsic evidence to determine the parties' intent. Armed now with the circuit court's factual findings, we agree that the 2005 Right of First Refusal created a right of first refusal and not a dual option. Yes, the agreement contains a fixed price and refers to a third-party offer, but "neither stipulated prices nor third party considerations determine whether a particular clause is an option or a right of first refusal." *Id.* ¶ 7, 876 N.W.2d at 53 (quoting *Stuart v. D'Ascenz*, 22 P.3d 540, 542 (Colo. App. 2000)). Likewise, a right of first refusal can "require offering the property at a fixed price" or can allow the holder of the right "to purchase the property on the same terms as the third party." *Id.* (quoting *Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n One, Inc.*, 986 So. 2d 1279, 1285 (Fla. 2008)).

[¶19.]    In ascertaining the parties' intent, the circuit court noted that the 2000 Right of First Refusal was similar in multiple respects to the 2005 Right of First Refusal, including that they both contained a specified price and referred to the Barr Partners' right to purchase upon the Laskas' receipt of a bona fide third-party offer. The court acknowledged the Barr Partners' claim that the 2000 Right of First Refusal was a dual-option agreement. The court, however, found that if the 2000 Right of First Refusal was "in fact an option contract, Barr Partners could have exercised their option then. They instead negotiated a new price term of an additional $500 per acre." The circuit court remarked that "[t]his is of great assistance in determining that only a right of first refusal existed" under the 2005 Right of First Refusal.

[¶20.]    The court also relied on Gerrit Juffer's testimony. Gerrit had drafted the 2005 Right of First Refusal and testified that it created just that—a right of first refusal. In the court's view, "[t]he testimony of Gerrit Juffer, the drafter of the contract, clearly indicates that he believed a right of first refusal existed based on the fact he believed that the Barr Partners would be able to purchase the land in question if [the Laskas] first received a third-party offer."

[¶21.]    In response, the Barr Partners point to disputed testimony from Pat Cole and Jerry Barr. But the court found more persuasive Gerrit's testimony regarding the intent of the parties. "We afford great deference to the circuit court's ability to judge the credibility of the witnesses and the weight to be given to their testimony." *In re Ricard Family Trust*, 2016 S.D. 64, ¶ 15, 886 N.W.2d 326, 330. From our review of the evidence, the court's factual findings, and the terms of the

2005 Right of First Refusal, the circuit court did not err when it held that the parties intended to create a right of first refusal.

### 2. Restraint on Alienation

[¶22.]    The Barr Partners next contend that the circuit court erred when it held that the "dual-option contract" constitutes an unreasonable restraint on alienation. They direct this Court to cases from other jurisdictions for the proposition that a properly construed dual-option contract is a reasonable restraint on alienation. *See Stenke v. Masland Dev. Co.*, 394 N.W.2d 418 (Mich. Ct. App. 1986); *Amco Oil Co. v. Kraft*, 280 N.W.2d 505 (Mich. Ct. App. 1979). Because we previously declared that the 2005 Right of First Refusal is right of first refusal and not a dual-option contract, we need not examine whether a dual-option contract can be a reasonable restraint on alienation.

[¶23.]    Nonetheless, the Barr Partners also assert that the 2005 Right of First Refusal is not an "unreasonable restraint on alienation so as to be barred by SDCL 43-3-5." They emphasize that conditions restraining alienation are void only "when repugnant to the interest created." The restraint here, according to the Barr Partners, is reasonable because the interest for which it was created does not violate public policy. They further emphasize that rights of first refusal "are not inherently violations of prohibitions on alienation." The Barr Partners also claim that the right is limited in time because it extinguishes when the Laskas receive a bona fide third-party offer and the Barr Partners do not "exercise their right of first refusal to match the third-party offer within ten days of notification."

[¶24.]     Under SDCL 43-3-5, "[c]onditions restraining alienation, when repugnant to the interest created, are void." A right of first refusal is a preemptive right restraining alienation. *See Laska*, 2016 S.D. 13, ¶ 11, 876 N.W.2d at 55. It "is a valuable prerogative, limiting the owner's right to freely dispose of his property by compelling him to offer it first to the party who has the first right to buy." *Wilson v. Whinery*, 678 P.2d 354, 356 (Wash. Ct. App. 1984). To be valid, the restraint must be reasonable and for a legitimate purpose. *See Urquhart v. Teller*, 958 P.2d 714, 718 (Mont. 1998); *accord Borrette Lane Estates, LLC v. Warren*, No. A117459, 2010 WL 292754 (Cal. Ct. App. Jan. 26, 2010); *Trecker v. Langel*, 298 N.W.2d 289, 291-92 (Iowa 1980); *Rubin v. Moys*, No. 17075–6–III, 1999 WL 685797, at *7 (Wash. Ct. App. Sept. 2, 1999).

[¶25.]     We have not before examined the reasonableness of a right of first refusal on its restraint against alienation. Other courts examining language similar to our statute have considered a number of factors, including: the purpose, whether the price is fixed, the parties' intent, and the duration of the restraint. *Urquhart*, 958 P.2d at 717-719; *Trecker*, 298 N.W.2d at 291-92; *Franklin v. Johnston*, No. 15-2047, 2017 WL 1086205, at *6-7 (Iowa Ct. App. March 22, 2017); *Rubin*, 1999 WL 685797, at *7. Courts "evaluate the 'nature, extent, and duration of the restraint,' as well as the 'nature of the property interest and the type of land or development involved.'" *Atlantic Richfield Co. v. Whiting Oil & Gas Corp.*, 320 P.3d 1179, 1185 (Colo. 2014) (quoting Restatement (Third) of Prop.: Servitudes § 3.4 cmt. c). "The standard against which the impact of a restraint is to be measured is that of the property owner free to transfer property at his or her convenience at a

price determined by the market." Restatement (Third) of Prop.: Servitudes § 3.4 cmt. c.

[¶26.] Here, the Barr Partners gave the Laskas $1.00 and other good and valuable consideration for the right to purchase Juffer Three for $10,500 per acre. Although the Barr Partners claim that the right is limited in time because it will expire if the Barr Partners do not exercise their right and match a third-party offer within ten days of notification, the 2005 Right of First Refusal does not require the Barr Partners to *match* a third-party offer. On the contrary, the agreement gives the Barr Partners the right to purchase Juffer Three for $10,500 per acre regardless of the fair market value of Juffer Three, regardless of any improvements made, and regardless of a bona fide third-party offer at a price considerably higher than $10,500 per acre.

[¶27.] We recognize that a fixed price does not render the restraint unreasonable per se. *Rubin*, 1999 WL 685797, at *7. Nor does the unlimited duration. But "[t]he greater the practical interference with the owner's ability to transfer, the stronger the purpose that is required to justify a direct restraint on alienation." Restatement (Third) of Prop.: Servitudes § 3.4 cmt. c. The purpose of the restraint, according to the Barr Partners, was to allow them to purchase Juffer Three to complete their Sand Dollar Cove development. But the circuit court found no evidence "that the Barr Partners were trying to protect any property interests they had anywhere[.]" Rather, the court concluded that "the Barr Partners were attempting to obtain more property to turn a profit and, in the process, stop Laskas

from being able to sell their property to anyone else by virtue of the right of first refusal in the 2005 contract."

[¶28.]     Our review of Gerrit's testimony from trial supports the court's findings. Gerrit testified that after purchasing Juffer One and Juffer Two, the Barr Partners developed the property into parcels and sold those parcels to individuals for a profit. He further testified that they intended to do the same with the property comprising Juffer Three. Yet nothing in the 2005 Right of First Refusal accounts for appreciation in the value of the land. Moreover, the agreement in no way conditions the Barr Partners' right to purchase the property on the Laskas' willingness to accept a third-party offer. The Laskas need only receive a third-party offer to trigger the Barr Partners' right to purchase the property for $10,500 per acre, which right to purchase exists for eternity. Because there is a significant interference with the Laskas' ability to transfer the property without a strong purpose justifying the restraint, the practical effect of the restraint, if imposed, will prevent the long-term improvement and marketability of Juffer Three. The court did not err when it held that the right of first refusal is an unreasonable restraint on alienation and repugnant to the interest created.

### 3. Narrow the Scope of the Alienation

[¶29.]     The Barr Partners alternatively claim that if the right of first refusal constitutes an unreasonable restraint on alienation, the circuit court erred when it declared the 2005 Right of First Refusal void at its inception. According to the Barr Partners, the court should have limited the right granted under the agreement to "the lifetimes of the Laskas and Barr Partners plus thirty years, or to otherwise

limit its scope to bring it [in] line with reasonable restraints on alienation." They rely on the Restatement (Third) of Property for the proposition that "[u]nless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy." Restatement (Third) of Prop.: Servitudes § 4.1(2).

[¶30.] In *Laska*, we recognized that "there is a strong tendency to construe an option or preemption right to be limited to the lives of the parties, unless there is clear evidence of a contrary intent." 2016 S.D. 13, ¶ 10, 876 N.W.2d at 54 (quoting *Kuhfeld v. Kuhfeld*, 292 N.W.2d 312, 315 (S.D. 1980)). Here, the circuit court found that the Barr Partners clearly intended the right of first refusal to survive the death of the parties while the Laskas were unsure what duration was intended. The court concluded that because the parties' intent "cannot be gleaned from the evidence," the 2005 Right of First Refusal was null and void from its inception.

[¶31.] Even if we construe the right of first refusal to be limited to the deaths of the parties plus thirty years or to be a different time limitation, we must still examine the restraint with that new time limitation to determine whether it remains an unreasonable restraint on alienation. *Laska*, 2016 S.D. 13, ¶¶ 10-11, 876 N.W.2d at 54-55. Limiting the time of performance to the deaths of the parties would mean that the Barr Partners have the right to purchase Juffer Three for $10,500 per acre upon the Laskas' receipt of a bona fide third-party offer during the lifetimes of Marlen Laska, Patricia Laska, Jerry Barr, Pat Cole, and Gerrit Juffer. But limiting the time of performance does not remedy the fact that the Laskas need not have an intention to sell to a third party; they need only receive a bona fide

third-party offer. And although the Barr Partners claim they must match a third-party offer to exercise the right, the 2005 Right of First Refusal does not include that requirement; the Barr Partners have the right to purchase Juffer Three for $10,500 per acre.

[¶32.] Although the law may imply a reasonable time when a preemptive right contains no time clause whatsoever, we will not imply a duration when there is no evidence the parties intended the agreement to be limited in time. *Kuhfeld*, 292 N.W.2d at 314 ("An option which is intended by its parties to run for an unlimited time is void; however, an option which is to remain open for a limited time, but in which no time is stated, is valid."). Here, the court found "undisputed" that "the Barr Partners believed that under all circumstances their rights under the 2005 contract lasted forever and were binding upon the parties and their heirs for eternity." Likewise, even if we limit the duration of the preemptive right, the Barr Partners direct us to no law permitting this Court to rewrite the agreement to require the Barr Partners to purchase Juffer Three at the market rate. Because the restraint, even with a limited duration, remains repugnant to the interest created, the circuit court did not err when it voided the 2005 Right of First Refusal.

[¶33.] Affirmed.

[¶34.] GILBERTSON, Chief Justice, ZINTER and SEVERSON, Justices, and PEKAS, Circuit Court Judge, concur.

[¶35.] PEKAS, Circuit Court Judge, sitting for KERN, Justice, disqualified.

[¶36.] JENSEN, Justice, did not participate.