#25868-rev & rem-DG

2011 S.D. 75

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CITY OF RAPID CITY,
a municipal corporation,                        Plaintiff and Appellant,

v.

DOYLE ESTES, individually,
BIG SKY, LLC and DAKOTA
HEARTLAND, INC.,                                Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

JOHN K. NOONEY
AARON T. GALLOWAY of
Nooney, Solay & Van Norman, LLP
Rapid City, South Dakota                        Attorneys for plaintiff
                                                and appellant.


EDWARD C. CARPENTER
STEPHEN C. HOFFMAN of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter, LLP
Rapid City, South Dakota                        Attorneys for defendants
                                                and appellees.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 22, 2011
OPINION FILED 11/16/11

GILBERTSON, Chief Justice

[¶1.]      Rapid City (City) Ordinances require a developer to complete certain

public improvements before the City accepts a final plat.  In lieu of completing the

improvements before the City accepts a plat, the City may accept a surety from a

developer.  In this case, Doyle Estes; Big Sky, LLC; and Dakota Heartland, Inc.

(collectively "Developers") provided sureties which the City accepted.  The sureties

expired.  The City sued Developers, seeking relief to have the required public

improvements completed or repaired to meet the City's standards.  The circuit court

granted summary judgment in favor of Developers.  We reverse and remand.

**FACTS**

[¶2.]      Developers were involved in developing the Big Sky subdivision in

Rapid City, South Dakota.  Under SDCL 11-6-26, a municipality has extra-

territorial jurisdiction to regulate the subdivision of all land within three miles of

the municipality's corporate limits.[1]  Under SDCL 11-6-27[2] the City adopted

---

1.      SDCL 11-6-26 provides in part:
        After the city council of any municipality has adopted a
        comprehensive plan that includes at least a major street plan or
        has progressed in its comprehensive planning to the stage of
        making and adopting a major street plan, and has filed a
        certified copy of the major street plan in the office of the register
        of deeds of the county in which the municipality is located, no
        plat of a subdivision of land lying within the municipality, or of
        land within three miles of its corporate limits and not located in
        any other municipality, may be filed or recorded unless the plat
        has the recommendation of the city planning and zoning
        commission and the approval of the city council.

2.      SDCL 11-6-27 provides in part: "In exercising the duties granted to it by this
        chapter, the planning commission shall recommend and the council shall by
                                                        (continued . . .)

Chapter 16 of Rapid City Municipal Code (RCMC). Chapter 16 establishes regulations governing the subdivision of land within the City's jurisdiction.

[¶3.]     RCMC 16.16.010 requires subdividers to install or construct certain public improvements:

> A. The subdivider is required to install or construct the improvements hereinafter described prior to receiving approval of his or her final plat or prior to having released bond or other securities which guarantee the required improvements.
> B. All improvements required under these regulations shall be constructed in accordance with City Specificiations and under the inspection of the City Engineer or his or her duly authorized representative.

RCMC 16.16.010. "Improvements" include streets, curbs, gutters, property markers, sidewalks, street lights, traffic signs, water mains, sanitary sewers, and storm sewers. RCMC 16.16.020 - .090. The City adopted Standard Specifications for Public Works Construction (Specifications) that improvements were required to meet.

[¶4.]     The RCMC provided an alternative to prior construction of required improvements before approval of final plats would be considered. RCMC 16.20.060 provides:

> A. No final plat shall be approved by the Common Council or accepted for record by the Register of Deeds until all the preceding required improvements listed shall be constructed in a satisfactory manner and approved by the Director of Public Works or his or her designee; *or in lieu of the prior construction, the Common Council may accept a security bond*

─────────────────────────────

(. . . continued)
    ordinance adopt regulations governing the subdivision of land within its
    jurisdiction as defined in § 11-6-26."

> *in an amount equal to the estimated cost of installation of the required improvements*, whereby the improvements will be made and utilities installed without cost to the city in the event of default of the subdivider.[3]
>
> B.  If the final plat is for transfer of title and is so designated, the Common Council may approve other methods, in lieu of actual completion or bonds, whereby the city is put in assured position that all the improvements will be made before the land is developed.  All bonds and other methods of guarantee shall be approved by the City Attorney.

(Emphasis added.)

[¶5.]     After improvements are completed, the City's Specifications address

project acceptance:

> *Final acceptance of the project by the Owner [City] will be documented by the issuance of an acceptance letter*, which is issued according to the following criteria:
> 1)  Construction has been substantially completed and the facilities can be put to their intended use.
> 2)  All testing has been completed, and the required results have been met.
>
> The date of the **acceptance letter documents** the start of the two-year warranty period, during which the Contractor shall be notified in writing of any defects in the project and shall correct the defects at his expense . . . .

---

3.     This provision appears to be included under the authority of SDCL 11-6-29:

> Subdivision regulations may provide that, in lieu of the completion of such work and installations previous to the final approval of a plat, the council may accept a bond, in an amount and with surety and conditions satisfactory to it, providing for and securing to the municipality the actual construction and installation of such improvements and utilities within a period specified by the council and expressed in the bond; and the municipality is hereby granted the power to enforce such bonds by all appropriate legal and equitable remedies.

RCMC Specifications, § 7.65 (emphasis added). This section was revised in June 2006 to clarify that the "contractor/subdivider/developer" is responsible for improvement repairs.[4]

[¶6.]    Developers applied for approval of 15 subdivision plats. All of the subdivision improvements were either completed or surety was posted to guarantee completion of the improvements. Each plat was approved by the City between 1998 and 2005.

[¶7.]    The City conducted final inspections of the required public improvements for some of the properties. After the inspections the City provided a "punch list" identifying deficiencies.[5] The areas marked as deficient needed to be corrected before the City would formally accept ownership and maintenance of the public improvements. No follow-up inspections were completed. The remaining properties identified in this suit have never undergone a final inspection.

[¶8.]    The sureties expired. Developers claim to have spent $5,160,000.00 in payments to independent contractors and engineers to install public improvements in the subivisions and paid $77,400.00 to the City for inspections of these improvements. The City has never formally accepted ownership or maintenance responsibility for any of the public improvements on the properties. No "acceptance

---

4.    Developers emphasize that RCMC Chapter 16 was revised in June 2006. Developers argue that until 2006, the City did not have a formal process to ensure public improvements were improved and accepted. We confine our analysis to the ordinances as written at the time approval for the plats was sought and sureties were posted.

5.    Developers point out that this punch list related to an earlier phase of the subdivision development and was not a "final" inspection.

letter" was sent to Developers as indicated in Specifications § 7.65. Developers contend that they informed the sub-contractors of the deficiencies but repair efforts either failed or were not undertaken.

[¶9.] The City filed suit in 2008. The City claims there are major deficiencies in the properties. The City alleges that Developers failed to satisfy their obligations on numerous plats to build or correct public improvements. The City seeks injunctive relief to require Developers to complete certain improvement obligations and repair any deficiencies, subject to a final inspection by the City. Alternatively, the City requests the court order Developers "to specifically perform their obligations under the City's subdivision ordinances." Developers filed for summary judgment, asserting that when the sureties expired, they were no longer liable for the improvements under RCMC 16.20.060. The circuit court granted summary judgment in favor of Developers. On appeal, we address whether the circuit court erred in granting summary judgment in favor of Developers.[6]

---

6. Developers argue that the City did not formally accept the improvements and therefore lacks ownership of them. Developers assert that this deprives the court of subject matter jurisdiction because "[i]f the facts are indeed as City contends, and no 'acceptance' of these improvements has ever occurred, then where is City's standing to bring this action?" "Subject matter jurisdiction is the power of a court to act such that without subject matter jurisdiction any resulting judgment or order is void." *Cable v. Union Cnty. Bd. of Cnty. Comm'rs*, 2009 S.D. 59, ¶ 20, 769 N.W.2d 817, 825 (quoting *City of Sioux Falls v. Missouri Basin Mun. Power Agency*, 2004 S.D. 14, ¶ 10, 675 N.W.2d 739, 742). "Subject matter jurisdiction is conferred solely by constitutional or statutory provisions." *Id.* (quoting *In re Application of Koch Exploration Co.*, 387 N.W.2d 530, 536 (S.D. 1986)). Black's Law Dictionary defines subject matter jurisdiction as "jurisdiction over the nature of the case and the type of relief sought; the extent to which a court can rule on the conduct of persons or the status of things." *Black's Law Dictionary* 870 (8th ed. 2004). Conversely,

(continued . . .)

## STANDARD OF REVIEW

[¶10.]    The standard of review for a grant or denial of a motion for summary

judgment is settled.

> In reviewing a grant or a denial of summary judgment under
> SDCL 15–6–56(c), we determine whether the moving party has
> demonstrated the absence of any genuine issue of material fact
> and showed entitlement to judgment on the merits as a matter
> of law.  In considering a trial court's grant or denial of summary
> judgment, this Court will affirm only if all legal questions have
> been decided correctly.

*Muhlbauer v. Estate of Olson*, 2011 S.D. 42, ¶ 7, 801 N.W.2d 446, 448 (quoting

*Bertelsen v. Allstate Ins. Co.,* 2011 S.D. 13, ¶ 5, 796 N.W.2d 685, 692-93).  "All

reasonable inferences drawn from the facts must be viewed in favor of the non-

_____

(. . . continued)

standing is "a party's right to make a legal claim or seek judicial enforcement
of a duty or right." *Black's Law Dictionary* 1442 (8th ed. 2004).  In order to
establish standing, a litigant must show: (1) an injury in fact that is (a)
concrete and particularized and (b) actual or imminent; (2) a causal
connection between the plaintiff's injury and the conduct of which the
plaintiff complains; and (3) the likelihood that the injury will be redressed by
a favorable decision. *Cable*, 2009 S.D. 59, ¶ 21, 769 N.W.2d at 825-26;
*Benson v. State*, 2006 S.D. 8, ¶ 22, 710 N.W.2d 131, 141.  *See also Lujan v.
Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed.
2d 351 (1992).  Determining lack of standing or lack of subject matter
jurisdiction are separate arguments that require separate analyses.  It is
possible for a court to have subject matter jurisdiction, but a party could lack
standing.  In this case, although Developers attempt to cloak their issue as
one of subject matter jurisdiction, the content of the arguments goes to
standing.  We conclude that the City has standing because after
improvements are accepted, the City assumes ownership, maintenance, and
operation of them.  The City therefore would suffer financial injury if the
Developers fail to construct the improvements to meet the design standards
as required by law.  Furthermore, the issue of standing was not raised below.
"When an issue was not raised at the trial court level, we will not ordinarily
address it on appeal." *State v. Sorensen*, 2004 S.D. 108, ¶ 5 n.2, 688 N.W.2d
193, 196 n.2.

moving party." *Benson Living Trust v. Physicians Office Bldg. Inc.*, 2011 S.D. 30, ¶ 9, 800 N.W.2d 340, 342-43.

## ANALYSIS

[¶11.]     The circuit court granted Developers' motion for summary judgment after Developers argued that, under RCMC 16.20.060, the expiration of the sureties released them from their obligations to complete the public improvements. The City argues that the circuit court erred because when reading all the ordinances together, the expiration of the sureties did not relieve Developers of their obligation to construct the improvements according to the City's Specifications.[7]

[¶12.]     This is a case of statutory and ordinance construction.

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect.

*State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162. In this case we have several statutes and municipal ordinances governing the acceptance of public improvements. "To determine legislative intent, this Court will take other statutes on the same subject matter into consideration and read the statutes together, or *in pari materia*." *Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 2011 S.D. 45, ¶ 16, 801 N.W.2d 752, 756 (citing *Loesch v. City of Huron,* 2006 S.D. 93, ¶ 8, 723 N.W.2d 694, 697). "Statutes are construed to be *in pari materia*

---

7.     The City does not argue that there are any genuine issues of material fact.

when they relate to the same person or thing, to the same class of person or things, or have the same purpose or object." *Goetz v. State*, 2001 S.D. 138, ¶ 26, 636 N.W.2d 675, 683.

[¶13.]     RCMC 16.16.010(B) states that: "All improvements required under these regulations *shall be constructed in accordance with City Specificiations* and under the inspection of the City Engineer or his or her duly authorized representative." (Emphasis added.)  Specifications § 7.65 clearly states that "[f]inal acceptance of the project by the Owner [City] will be documented by the issuance of an acceptance letter . . . ."[8]  It is undisputed that the City never issued any final acceptance letters as referenced in the Specifications.  The provision of RCMC 16.20.060 allowing a surety to be posted in lieu of prior construction does not override the requirement of RCMC 16.16.010(B) that improvements be constructed according to the Specifications.  Nor does RCMC 16.20.060 indicate that posting a surety eliminates the requirement of Specifications § 7.65 that a final acceptance letter must be issued.  When all the ordianances are read together, the intent is clear that regardless of how or when plat approval is obtained, the improvements must be built according to the Specifications and accepted by the City.

[¶14.]     We must also take into consideration Specifications § 7.55, which provides that: "The Engineer, upon completion of the contract work, shall satisfy himself by examination and test that the work has been finally and fully completed

---

8.     Developers argue that Specifications § 7.65 only applies to "Contractors" and Developers are not contractors.  In this case, from a plain reading of the ordinance, Developers are contractors who engaged sub-contractors to complete various improvements.

in accordance with the Specifications and Contract, and report such completion to the Owner." The engineer cannot examine and test the work if the developer never completes the improvements. If we were to agree with Developers' argument, then any time a surety is posted a developer can do nothing and hope that the city will let the surety expire. This clearly goes against Specifications § 7.55, which requires that the Engineer must be satisfied that the work has been completed correctly before the City can formally accept the improvements by letter.

[¶15.] Under the ordinances and specifications, Developers remain liable until the City accepts the improvements by a final acceptance letter. The sureties made it possible for Developers to obtain plat approval from the City Council without first constructing the improvements. But it does not relieve Developers from constructing the improvements as required by the Specifications. Neither do the sureties release Developers from this obligation until they receive a final acceptance letter. Obtaining plat approval and receiving a final acceptance of the required improvements are distinct, separate actions.

[¶16.] Because it does not appear that all legal questions were correctly decided, we reverse and remand.

[¶17.] WILBUR, Justice, and MYREN, Circuit Court Judge, concur.

[¶18.] HOFFMAN, Circuit Court Judge, concurs with a writing.

[¶19.] PORTRA, Circuit Court Judge, dissents.

[¶20.] MYREN, PORTRA and HOFFMAN, Circuit Court Judges, sitting for KONENKAMP, ZINTER, and SEVERSON, Justices, disqualified.

#25868

HOFFMAN, Circuit Court Judge (concurring).

[¶21.] I concur in the majority decision. I write separately to address the standing issue.

[¶22.] In my view the City does have standing within the strictures of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d. 351 (1992), and *Benson v. State*, 2006 S.D. 8, 710 N.W.2d 131, by virtue of its having accepted the surety bonds in lieu of actual completion of the contemplated improvements under RCMC 16.20.060 and SDCL 11-6-29. Acceptance of the surety bond is "in lieu of the completion of such work and installations previous to the final approval of [the] plat[.]" SDCL 11-6-29. According to the express language of the ordinance, acceptance of a surety bond by the City, for purposes of effectuating plat acceptance, is the functional equivalent of satisfactory construction of the improvements by the Developer and the subsequent approval of the same by the Director of Public Works. RCMC 16.20.060. Accordingly, once a plat is approved under this alternative procedure, it may be recorded and the City then assumes responsibility for the infrastructure developed within the public areas identified therein.

[¶23.] According to South Dakota law, once the plat is approved, it may be recorded with the register of deeds. SDCL 11-3-6, 11-6-26, 11-6-34. Once that occurs, ownership and maintenance responsibility for the public areas within the subdivision passes to the City. SDCL 11-3-12. *See also Herrmann v. Bd. of Comm'rs of City of Aberdeen*, 285 N.W.2d 855, 856 (S.D. 1979); *Haley v. City of Rapid City*, 269 N.W.2d 398, 400 (S.D. 1978). Only upon that contingency may the Developer actually sell the subdivided lots. SDCL 11-6-35. The various

-10-

developments at issue in this case were approved between 1998 and 2005. Had development and subdivision not occurred, the plats could have been vacated and the public rights returned to Developers. *See* SDCL 11-3-16. That is not what occurred in this case. Rather, the infrastructure is substantially completed in the developments, but the City seeks remediation from the Developers for certain quality control issues that have not passed final inspection by the City Engineer.

[¶24.]     As the majority points out, Developers are not relieved of their obligations to bring the improvements into compliance with the City's Construction Specifications merely because the sureties that facilitated acceptance and recording of the plats have now expired. Rather, the Developers continue to be legally bound, pursuant to RCMC 16.16.010(B), to finish the job and build the infrastructure according to the Specifications. If, as the City now asserts, the Developers have defaulted in their obligations, and, were it the case that the Developers could not be held to account for the same, then the City ultimately would be obligated to bring the infrastructure within the public areas into compliance with the plats because the City owns them. 64 C.J.S. *Municipal Corporations* § 1790 (2011); *Haley*, 269 N.W.2d 398.

[¶25.]     The City has not issued an acceptance letter pursuant to the Construction Specifications documenting the start of the Developers' warranty period for improvements, due to its perception that the infrastructure is incomplete. However, the City's failure to issue an acceptance letter is of no consequence to the determination of the standing issue. As a matter of law, the City accepted the plats when it accepted the sureties in lieu of actual project completion, and title to the

public areas vested in the City when the plats were recorded. This is the only cogent reconciliation of the applicable statutes and ordinances, when given their plain meaning. *State ex rel. Dep't. Transp. v. Clark*, 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162.

[¶26.]     The City's final "acceptance letter," is merely an expression of the City's recognition that the Developers' work has met the Construction Specifications, and, as such, is a red herring vis-à-vis the standing issue. The City's withholding of the acceptance letter does not override the clear terms of the legislation and ordinances setting forth that acceptance of a surety bond constitutes final approval of the corresponding plat, which, when recorded, incorporates the infrastructure within that platted area into the City's maintenance domain, as a matter of law. Accordingly, the City's remedy for alleged inadequate adherence by the Developers to the Construction Specifications in this context is to bring suit against the Developers, which is precisely what has occurred in this case. The City is indeed the real party in interest pursuant to SDCL 15-6-17(a) in this action, and has the concomitant standing to enforce via litigation the Developers' obligations to bring the public improvements at issue in this case into compliance with the applicable specifications.

PORTRA, Circuit Court Judge (dissenting).

[¶27.]     I respectfully dissent. I find that the City does not have standing. First, the issue of standing has not been waived. This Court has previously held that a plaintiff must establish standing as an aggrieved person such that a court

has subject matter jurisdiction. *Cable v. Union Board of Cnty. Comm'rs*, 2009 S.D. 59, ¶ 21, 769 N.W.2d 817, 825 (citations omitted). Further, "[i]t is the rule in this state that jurisdiction must affirmatively appear from the record and this [C]ourt is required *sua sponte* to take note of jurisdictional deficiencies, whether presented by the parties or not." *Elliott v. Board of Cnty. Comm'rs of Lake Cnty.*, 2005 S.D. 92, ¶ 17, 703 N.W.2d 361, 368 (citations omitted). Therefore, the issue cannot have been waived.

[¶28.] Considering the merits of the issue, the majority asserts that the City has standing "because after improvements are accepted, the City assumes ownership, maintenance and operation of them." However, the City has not accepted the improvements and therefore standing is based on a contingency. In order for the City to have standing, it must have suffered an injury in fact that is a) concrete and particularized and b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). The speculated injury in this case may not happen.

[¶29.] The City's simple remedy is to refuse to accept the improvements until they are in compliance with the City's ordinances. If that never happens, the City can refuse to issue building permits within the subdivisions and abate any nuisance caused by the failed subdivisions, if necessary. So at this time, the City has suffered no injury and they have more than adequate remedies at law to protect themselves in the future. This lawsuit by the City is premature. Therefore, I would affirm the trial court on other grounds because the City does not have standing.