#28205, #28227-a-DG
**2018 S.D. 45**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

CITY OF RAPID CITY, a
Municipal Corporation,                                              Plaintiff and Appellant,

v.

BIG SKY, LLC and
DOYLE ESTES, Individually,                                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE WARREN G. JOHNSON
Retired Judge

\* \* \* \*

JOHN K. NOONEY
ROBERT J. GALBRAITH of
Nooney & Solay LLP
Rapid City, South Dakota                          Attorneys for plaintiff
                                                                    and appellant.


DONALD A. PORTER
JESS M. PEKARSKI
CHRISTOPHER A. CHRISTIANSON of
Costello, Porter, Hill, Heisterkamp,
  Bushnell & Carpenter LLP
Rapid City, South Dakota                          Attorneys for defendants
                                                                    and appellees.

\* \* \* \*

ARGUED JANUARY 9, 2018
OPINION FILED **06/13/18**

GILBERTSON, Chief Justice

[¶1.] The City of Rapid City filed an action against real-estate developers Big Sky LLC and Doyle Estes (collectively, "Developers"), seeking to recover the prospective cost of repairing roads in the Big Sky development outside Rapid City. A jury returned a general verdict in favor of the Developers. The City appeals the general verdict, arguing the circuit court erred by: (1) denying the City's motion for summary judgment on the issue of liability; (2) excluding evidence of the Developers' litigation and settlement with their subcontractors; (3) granting Estes's motion for judgment as a matter of law; (4) instructing the jury on period-of-limitation, waiver, and estoppel defenses; and (5) refusing to instruct the jury on nuisance. We affirm.

## Facts and Procedural History

[¶2.] This case involves the development of real property known as the Big Sky subdivision, which is located within the extraterritorial jurisdiction of Rapid City. The Developers acquired real property in this area and applied to the City for approval of 15 subdivision plats. Under the City's municipal code, a plat will not be approved unless the subdivider completes the construction of certain public improvements or offers a bond guaranteeing such construction. The Developers either completed the improvements or provided bonds for each of the 15 plats, and the City approved these plats between 1998 and 2005.

[¶3.] Following approval of the plats, the City identified several deficiencies in the public improvements installed by the Developers' contractor and subcontractors. In particular, some of the subdivision's streets had settled significantly since their construction. The City indicated it would not assume

-1-

ownership of the public improvements until the deficiencies were corrected. The Developers did not correct the identified deficiencies, and the City did not conduct subsequent inspections. The bonds posted by the Developers expired without the City attempting to collect on them. Eventually, litigation ensued.

[¶4.] The procedural history of this case is complex and involves several parties. In May 2003, Big Sky filed a complaint against J. Scull Construction Service Inc., the subcontractor that worked on Phases 1 through 3 of the subdivision. And in March 2007, Big Sky filed a complaint against R.C.S. Construction Inc., the subcontractor that worked on Phase 4. Big Sky alleged that Scull and R.C.S. breached their contracts with Big Sky by failing to properly compact the soil underlying the streets in Phases 1 through 4. Big Sky and Scull settled shortly after Big Sky filed its complaint against R.C.S.

[¶5.] In January 2008, the City filed a separate complaint against the Developers, seeking specific performance and an injunction requiring the Developers to complete the repairs. The circuit court granted summary judgment to the Developers on the City's complaint, reasoning that the expiration of the bonds absolved the Developers of their obligation to complete the public improvements. This Court reversed the grant of summary judgment and remanded in *City of Rapid City v. Estes*, 2011 S.D. 75, 805 N.W.2d 714. On remand, the Developers filed a third-party complaint against Rapid Construction LLC, the general contractor. Rapid Construction, in turn, filed a fourth-party complaint against Dream Design International Inc., the Developers' engineering firm. And to bring things full circle, Dream Design International counterclaimed against the City. The court then

-2-

consolidated the Developers' action against R.C.S. with the City's suit against the Developers. In April 2016, the City amended its complaint to allege nuisance as an additional cause of action.

[¶6.]     The various parties settled most of the foregoing litigation. As noted above, Big Sky settled with Scull in 2007. Big Sky also settled its complaints against R.C.S. and Rapid Construction. Rapid Construction settled with Dream Design International. And finally, the Developers and the City settled in regard to all disputed project phases other than Phases 1 through 4. So prior to trial, Scull, R.C.S., Rapid Construction, and Dream Design International were each removed as parties, and the issues were narrowed to the dispute between the City and the Developers regarding Phases 1 through 4 of the subdivision.[1] Citing this Court's decision in *Estes*, the City moved for summary judgment on the issue of the Developers' liability for these phases. The circuit court denied the motion.

[¶7.]     A jury trial was held January 23 through 27, 2017. During the trial, the circuit court excluded evidence offered by the City regarding Big Sky's litigation and settlement with Scull and R.C.S. Estes filed a motion for judgment as a matter of law, which the court granted because the City did not dispute that Big Sky was the sole owner of the properties at issue in Phases 1 through 4. And over the City's objection, the court instructed the jury on the Developers' period-of-limitation, waiver, and estoppel defenses. The court did not instruct the jury on the City's

---

1.     It is unclear how Dream Design's counterclaim against the City was resolved.

nuisance theory. The jury returned a general verdict in favor of the Developers, denying any relief to the City.

[¶8.]        The City appeals, raising the following issues[2]:

1.    Whether the City was entitled to summary judgment on the issue of the Developers' liability.

2.    Whether the circuit court erred by excluding evidence of Big Sky's claims against, and settlements with, Scull and R.C.S.

3.    Whether the circuit court erred by granting Estes's motion for judgment as a matter of law.

4.    Whether the circuit court erred by instructing the jury on the Developers' period-of-limitation, waiver, and estoppel defenses.

5.    Whether the circuit court erred by not instructing the jury on the City's public-nuisance claim.

### Analysis and Decision

[¶9.]        ***1.    Whether the City was entitled to summary judgment on the issue of the Developers' liability.***

[¶10.]       The City first argues the circuit court erred by denying the City's motion for summary judgment on the issue of the Developers' liability. In the City's view, the Developers' liability was established as the law of the case in *Estes*. In *Estes*, this Court held that the expiration of bonds given in lieu of completing public improvements did not release the Developers from the obligation of making those

---

2.    By notice of review, the Developers also raise a constitutional issue. According to the Developers, the "City's claims were based on its Municipal Code section 16.16.010 that requires subdividers to 'install or construct' public improvements, including streets, street lights, sanitary sewers and water mains." But as Developers point out, the Legislature is prohibited from "delegat[ing] to any . . . private corporation . . . any power to make . . . any municipal improvement[.]" S.D. Const. art. III, § 26. Because we affirm on all other issues presented, it is not necessary to reach this constitutional question.

improvements. 2011 S.D. 75, ¶¶ 1, 11, 15, 805 N.W.2d at 715, 718-19. In the opinion's concluding paragraph, this Court said: "Under the ordinances and specifications, Developers remain liable until the City accepts the improvements by a final acceptance letter." *Id.* ¶ 15, 805 N.W.2d at 719. On remand, the City moved for summary judgment, reasoning that "[b]ecause the Developers remain liable to the City until the City accepts the improvements by a final acceptance letter and because it is undisputed that the City never issued any final acceptance letters, it must also be undisputed that the Developers are liable to the City in this litigation."

[¶11.] The City's argument fails. In *Estes*, the circuit court granted the Developers' motion for summary judgment on the basis that "when the sureties expired, [the Developers] were no longer liable for the improvements under" the City's municipal code. *Id.* ¶ 9, 805 N.W.2d at 717. This Court's review of that decision was therefore confined to a question of law: interpreting the meaning of the controlling statutes and ordinances. *See id.* ¶ 12, 805 N.W.2d at 718. But on remand, as evidenced by the issues raised in this appeal, the Developers asserted several defenses that were not at issue in *Estes*. In particular, the circuit court determined there were genuine issues of material fact regarding the Developers' waiver defense. Because *Estes* had nothing to do with the defenses at issue in this appeal (i.e., period of limitation, waiver, and estoppel), the City was not entitled to summary judgment in regard to those defenses, and the court correctly denied the City's motion for summary judgment on the issue of the Developers' liability. *See Nicolay v. Stukel*, 2017 S.D. 45, ¶ 21, 900 N.W.2d 71, 79-80 (holding entitlement to

summary judgment on issue of liability requires entitlement to summary judgment on defendant's affirmative defenses).

[¶12.]     ***2.    Whether the circuit court erred by excluding evidence of Big Sky's claims against, and settlements with, Scull and R.C.S.***

[¶13.]     Next, the City argues the circuit court erred by excluding evidence that Big Sky sued and settled with Scull and R.C.S. regarding their work on Phases 1 through 4. In both complaints, Big Sky alleged that it would "be caused and required to incur additional costs for engineering and other consulting services in the future and will be caused and required to incur additional costs for remedial work in the future necessary to further correct the defective and unworkmanlike performance of [Scull and RCS.]"[3] According to the City, "Big Sky's allegations in that litigation are direct admissions by Big Sky of continuing obligations to the City." The Developers respond that "[t]he fact and terms of Big Sky's settlement with [Scull and R.C.S.] were clearly inadmissible under SDCL 19-19-408."

[¶14.]     The admission of evidence relating to the settlement of a claim is governed by SDCL 19-19-408. With limited exception, evidence of "accepting . . . a valuable consideration in compromising . . . [a] claim"—i.e., a settlement—"is not admissible . . . either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" SDCL 19-19-408(a). "The court *may* admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an

---

3.     This language is taken from Big Sky's complaint against Scull. The language used in Big Sky's complaint against R.C.S. has minor, immaterial variations.

effort to obstruct a criminal investigation or prosecution." SDCL 19-19-408(b) (emphasis added). But as the emphasized word indicates, admission of such evidence under Rule 408's exception is not mandatory. Nothing in Rule 408 suggests that the exclusion overrides other applicable rules of evidence. Thus, even if the City had offered the settlement evidence for some purpose that fit within Rule 408's exception, the circuit court's decision to admit or exclude that evidence is still a matter of discretion.

[¶15.] In light of the foregoing, the City's argument is incomplete. Here, the circuit court permitted Estes to testify, over objection, that the contractors had failed to properly compact the soil and correct the deficiencies and that there would be additional costs to fix the roads. The only evidence disallowed by the court was the Developers' lawsuit and settlement with the contractors. The circuit court determined that the evidence was inadmissible because it was cumulative with other evidence already presented and because it would invite the jury to speculate regarding the amount of settlement. Under SDCL 19-19-403, a circuit court is permitted to exclude such evidence.[4] In order to show error on this issue, then, the City must show that the court's Rule 403 analysis was an abuse of discretion. *See Donat v. Johnson*, 2015 S.D. 16, ¶¶ 24, 26, 862 N.W.2d 122, 130-31. However, the City confines its argument to the question whether the purpose for which the City offered the settlement evidence fell within Rule 408's exception; the City does not

---

4. SDCL 19-19-403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

argue the court abused its discretion. Because the City has failed to show either an abuse of discretion or prejudice, there is no basis for reversing the court's evidentiary decision.

[¶16.]     ***3.     Whether the circuit court erred by granting Estes's motion for judgment as a matter of law.***

[¶17.]     The City also argues the circuit court erred by granting Estes's motion for judgment as a matter of law. Prior to trial, the parties settled all claims except those relating to project Phases 1 through 4. The circuit court granted the motion for the following reasons:

> Based upon the evidence presented, I find that Big Sky, LLC was a valid limited liability corporation; that Big Sky was the owner of the property involved in Phases 1 through 4 of the development; that Doyle Estes was the sole owner and manager of Big Sky, LLC. I find no evidence that Mr. Estes operated in a personal capacity during the development of Big Sky Phases 1 through 4, but at all times acted as the manager/owner of Big Sky, LLC; that Big Sky, LLC was a valid, functioning corporation throughout the development of the project. I cannot find any legal basis to hold Mr. Estes as an individual defendant.

Even so, the City asserts that Estes personally received compensation in exchange for releasing Big Sky's claims against Scull in regard to Phases 1 through 4. In the City's view, "Estes'[s] receipt of funds in litigation brought for the sole purpose of fixing the roads creates liability, or at the very least, a jury question for Estes."

[¶18.]     This argument also fails. "Except as otherwise provided in [SDCL 47-34A-303] subsection (c), the debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort, or otherwise, are solely the debts, obligations, and liabilities of the company." SDCL 47-34A-303(a). The City does not dispute that Big Sky was the sole owner of the plats involved in Phases 1

through 4; indeed, the City's amended complaint indicates as much. And the City never pleaded, does not now assert, and in fact specifically disclaimed arguing that Estes acted in such a way that he should be stripped of the protections of a limited-liability company. Considering the court's undisputed findings, the City has not advanced any theory that either directly attributes or imputes liability to Estes for Phases 1 through 4. Therefore, the court did not err by granting Estes's motion for judgment as a matter of law.

[¶19.]     **4.     *Whether the circuit court erred by instructing the jury on the Developers' period-of-limitation, waiver, and estoppel defenses.***

[¶20.]     Next, the City challenges the circuit court's jury instructions regarding the Developers' period-of-limitation, waiver, and estoppel defenses. The City contends the court's period-of-limitation and waiver instructions were incorrect as a matter of law. The City also contends there was insufficient evidence to instruct the jury on the Developers' waiver and estoppel defenses. Because the jury returned a general verdict for the Developers, that verdict must be affirmed if the circuit court correctly instructed the jury on at least one of the Developers' affirmative defenses. *See Lenards v. DeBoer*, 2015 S.D. 49, ¶ 14, 865 N.W.2d 867, 871 ("In a civil case, if a general verdict is handed down and the jury could have decided the case on two theories, one proper and one improper, the reviewing court will assume that it was decided on the proper theory." (quoting *Thomas v. Sully County*, 2001 S.D. 73, ¶ 7, 629 N.W.2d 590, 592)).

[¶21.]     The City contends there was insufficient evidence to warrant the estoppel instruction. A circuit court should instruct the jury on issues that are "supported by competent evidence in the record[.]" *Johnson v. Armfield*, 2003 S.D.

134, ¶ 7, 672 N.W.2d 478, 481 (quoting *Artz v. Meyers*, 1999 S.D. 156, ¶ 8, 603 N.W.2d 532, 534). This Court reviews "the circuit court's decision to grant or deny a specific jury instruction for an abuse of discretion." *Montana–Dakota Utils. Co. v. Parkshill Farms, LLC*, 2017 S.D. 88, ¶ 25, 905 N.W.2d 334, 343. "A claim that the evidence was insufficient to [warrant an instruction must be] viewed 'in the light most favorable to upholding the verdict.'" *Armfield*, 2003 S.D. 134, ¶ 7, 672 N.W.2d at 481 (quoting *Parker v. Casa Del Rey*, 2002 S.D. 29, ¶ 5, 641 N.W.2d 112, 115).

[¶22.] The doctrine of equitable estoppel is "[a] defensive doctrine preventing one party from taking unfair advantage of another when, through false language or conduct, the person to be estopped has induced another person to act in a certain way, with the result that the other person has been injured in some way." *Estoppel*, *Black's Law Dictionary* (10th ed. 2014). "[T]he doctrine of estoppel is available against a municipal corporation." *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179, 179 N.W.2d 15, 16-17 (1970). When the doctrine is asserted against a municipal corporation, the party asserting the defense must show that "municipal officers have taken some affirmative action influencing another which renders it inequitable for the municipality to assert a different set of facts." *Even v. City of Parker*, 1999 S.D. 72, ¶ 12, 597 N.W.2d 670, 674 (quoting *Hoogterp*, 85 S.D. at 180, 179 N.W.2d at 17). According to the City, "[t]here was no evidence presented at trial that Big Sky in any manner altered its position or did something it would not have otherwise done to its prejudice."

[¶23.]    The Developers respond that an estoppel instruction was warranted because they commenced paving the streets and installing curbs only after one of the City's inspectors concluded the underlying dirt had been compacted to the City's specifications. According to the Developers, the cost of correcting compaction errors significantly increases after paving. This argument is supported by the testimony of Lawrence Kostaneski, the former manager of the City's engineering division, and Ron Eikenberry, the City's inspector on all four phases at issue in this case. Kostaneski testified that typically, a City engineer is assigned to each phase of a subdivision and that each engineer is assigned one or more inspectors to assist in daily oversight. Eikenberry testified that as an inspector, his "primary responsibility was to be a construction observer[,]" which involved "mak[ing] sure that [the contractors] are, in general, following the specifications of the City of Rapid City[.]" He testified that on nearly a daily basis, he would visit the job site, speak with the foreman, inspect the actual work, and fill out a "daily construction diary" documenting "the events of the day[.]" Eikenberry's daily notes were admitted into evidence at trial and indicate that Phases 1 through 3 each passed compaction testing. Other City documentation—a "construction close-out checklist"—was also introduced into evidence and similarly indicates that Phase 4 passed compaction testing. And when asked if the City would have had notice of— and the opportunity to respond to—a compaction-test failure, Kostaneski answered affirmatively, indicating that "[c]ompaction test failures [would be] readily apparent to everyone."

[¶24.]     In light of the foregoing, the circuit court did not err by instructing the jury on estoppel.  The testimony of Kostaneski and Eikenberry, as well as documentary evidence, is competent evidence to support the Developers' argument that they would not have proceeded to paving roads and installing gutters in Phases 1 through 4 had the City not affirmatively indicated that the soil compaction was satisfactory.  *See id.* ¶ 14, 597 N.W.2d at 675 ("[T]he City may not, through its agents, affirmatively create an objectively reasonable impression in an applicant that he has fully complied with all zoning requirements and then proceed to withdraw permission after the applicant has taken steps towards construction which result in a substantial detriment to the applicant.").  Because the jury's general verdict could properly rest on the Developers' estoppel defense, the questions whether the court erred by instructing the jury on the Developers' period-of-limitation and waiver defenses are moot.  *See Lenards*, 2015 S.D. 49, ¶ 14, 865 N.W.2d at 871.

[¶25.]     ***5.     Whether the circuit court erred by not instructing the jury on the City's public-nuisance claim.***

[¶26.]     Finally, the City argues the circuit court erred by refusing to instruct the jury on the City's nuisance claim.

> On issues supported by competent evidence in the record, the trial court should instruct the jury.  The trial court is not required to instruct on issues lacking support in the record.  Failure to give a requested instruction that correctly sets forth the law is prejudicial error.  Jury instructions are reviewed as a whole and are sufficient if they correctly state the law and inform the jury.  Error is not reversible unless it is prejudicial.  The burden of demonstrating prejudice in failure to give a proposed instruction is on the party contending error.

*Sundt Corp. v. State ex rel. S.D. Dep't of Transp.*, 1997 S.D. 91, ¶ 19, 566 N.W.2d 476, 480 (quoting *Kuper v. Lincoln-Union Elec. Co.*, 1996 S.D. 145, ¶ 32, 557 N.W.2d 748, 758). Among other occurrences, "[a] nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission . . . renders dangerous for passage . . . any public park, square, street, or highway[.]" SDCL 21-10-1(3). Because the Developers' engineer testified that there were areas in the development that were "unsafe to travel," the City contends there was evidence to support giving a nuisance instruction. The Developers argue that ownership is an element of nuisance under SDCL 21-10-6, that the Developers do not own the properties at issue, and that therefore, a nuisance instruction was not warranted.

[¶27.]     The City's view of nuisance is incomplete. SDCL 21-10-1 does not state a complete cause of action—it is simply one of four statutes in SDCL chapter 21-10 that define what constitutes a nuisance. And even when a nuisance exists, the available remedies are enumerated in chapter 21-10. If a nuisance occurs, the remedies are: "(1) [a] civil action; (2) [a]batement; and (3) [i]n cases of public nuisance only, the additional remedy of indictment or information as prescribed by statute and rules relating thereto." SDCL 21-10-5. In a civil action, "the nuisance may be enjoined, or ordered abated, and damages recovered in addition." SDCL 21-10-9. A municipality may also bring a civil action after abating a public nuisance to recover the cost of abatement. SDCL 21-10-6. Thus, the relief available to the City in this civil action is limited to: (1) an injunction requiring the Developers to abate the alleged nuisance; (2) reimbursement for costs already incurred by the City in

abating the alleged nuisance; and (3) damages for legal injuries caused by the alleged nuisance.

[¶28.] In light of the foregoing, the City was not entitled to a jury instruction on nuisance. The City's amended complaint alleges the City had "been damaged in an amount to be determined at the time of trial." But from a review of the record and the parties' briefs, it is apparent that the basis for the City's "damages" claim is simply the anticipated cost of abatement and not some additional legal injury caused by the alleged nuisance. It is undisputed that at the time of trial, the City had not undertaken any abatement efforts in Phases 1 through 4. And neither chapter 21-10 nor any other authority identified by the City entitles a municipality to "recover" the cost of abatement prior to undertaking such abatement. Because the City simply has not incurred any abatement costs to defray, and because the City does not allege any other damages, the City was not entitled to a nuisance instruction.[5]

---

5.     Even if chapter 21-10 authorized a civil action to recover the anticipated cost of abatement that had not yet occurred, SDCL 21-10-6 suggests such an action could only be maintained against the owner of the property on which the nuisance exists. Under SDCL 21-10-6, a municipality's primary method of defraying the cost of abatement is to "tax[] the cost thereof by special assessment *against the real property on which the nuisance occurred*." (Emphasis added.) A municipality may "commence a civil action *against the owner of the real property* for its costs of abatement in lieu of taxing the cost by special assessment" only when "the nuisance abated is an unsafe or dilapidated building, junk, trash, debris, or similar nuisance arising from the condition of the property[.]" *Id.* (emphasis added). Thus, commencing a civil action to recover the cost of abatement is meant to be a limited alternative to taxing the property by special assessment. And if a municipality that has actually undertaken abatement can only recover the cost of abatement by taxing the property or bringing an action against the property's owner, a municipality that has not undertaken abatement must be similarly limited.

**Conclusion**

[¶29.]     This Court's decision in *Estes* did not address the Developers' period-of-limitation, waiver, and estoppel defenses; therefore, the circuit court did not err by denying the City's motion for summary judgment. The court did not abuse its discretion in excluding the evidence of Big Sky's litigation and settlement with Scull and R.C.S. The City does not dispute that Big Sky was the sole owner of Phases 1 through 4, and the City failed to identify any legal theory for imputing liability to Estes; therefore, the court did not err by granting Estes's motion for judgment as a matter of law. Finally, there is no reversible error in the court's instructions to the jury. Because the jury's general verdict can be explained by the Developers' estoppel defense, the questions whether the court erred by instructing the jury on the Developers' period-of-limitation and waiver defenses are moot. And a nuisance instruction was not necessary because SDCL chapter 21-10 does not permit a municipality to recover the prospective cost of abatement not yet undertaken.

[¶30.]     We affirm.

[¶31.]     JENSEN, Justice, and COMER, DAMGAARD, and BERN, Circuit Court Judges, concur.

[¶32.]     COMER, DAMGAARD, and BERN, Circuit Court Judges, sitting for ZINTER, SEVERSON, and KERN, Justices, disqualified.